**UNITED STATES, Appellee,**

v.

**Robert O. LANZER, Specialist Five, U. S. Army, Appellant.**

**No. 31,356.**
**SPCM 11113.**

U. S. Court of Military Appeals.

April 25, 1977.

*Captain Steven J. McAuliffe* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey* and *Captain Lawrence E. Wzorek.*

*Captain Laurence M. Huffman* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr.,* and *Captain Gary F. Thorne.*

Opinion of the Court

FLETCHER, Chief Judge:

█ Pursuant to his pleas and in accordance with the terms of a pretrial agreement with the convening authority,[1] the appel-

1. The convening authority agreed to approve no sentence greater than a bad-conduct dis-

charge (suspended for 6 months); confinement at hard labor for 4 months; forfeiture of two-

lant was convicted of making a false official statement and presenting a false claim in violation of Articles 107 and 132, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 932, respectively, at a special court-martial on July 16, 1974. He was sentenced to a bad-conduct discharge, 6 months' confinement at hard labor, and two-thirds forfeitures a month for 6 months. During the course of preparation of the staff judge advocate review, the appellant made certain statements during a post-trial interview [2] which were perceived to be inconsistent with the plea accepted by the trial judge as provident under the guidance of *United States v. Care*, 18 U.S.C. M.A. 535, 40 C.M.R. 247 (1969). The appellant was re-interviewed, and the staff judge advocate concluded that the appellant's responses were so inconsistent with his in-court statements as to require that the plea of guilty be rejected.[3] He recommended the plea be determined to be improvident, and the case be again set for trial. On October 4, 1974, the convening authority adopted the recommendation, and a second trial was conducted on October 22, 1974. The appellant pleaded not guilty and was acquitted of the charge of making a false official statement, but was found guilty of

presenting a false claim. He was sentenced to a bad-conduct discharge. The convening authority and the Army Court of Military Review approved the finding and sentence without modification. We granted the petition for grant of review to consider the appellant's contention that the convening authority was legally required under the terms of the pretrial agreement to suspend the bad-conduct discharge. Appellate defense counsel urge that the appellant complied fully with the terms of the agreement by entering both the stipulation of fact and pleas of guilty, and by having the pleas accepted as provident by the trial judge at his first trial. They argue, we feel correctly, that as the agreement was written expressly in terms of pretrial and trial actions by the appellant, the post-trial ex parte action of the convening authority of setting aside the findings and sentence, and ordering a rehearing, could not serve to repudiate the terms of the agreement and relieve him of his obligation to suspend the bad-conduct discharge.

As the Court noted in *United States v. Cox*, 22 U.S.C.M.A. 69, 71, 46 C.M.R. 69, 71 (1972):

The host of implications of contracts common to the marketplace have no counter-

---

thirds pay per month for the period of 6 months and reduction to the grade of Private E-1. The agreement specified five conditions, the happening of any of which would result in the automatic cancellation of the agreement:

1. Modification or withdrawal at any time of the agreed stipulation of facts without the consent of trial counsel or the convening authority;

2. Withdrawal by either party from this agreement prior to acceptance of the plea;

3. The failure of the accused to enter a plea of Guilty prior to the presentation of evidence on the merits and/or presentation of nonjudicial motions [since repudiated by the Court in *United States v. Holland*, 23 U.S.C. M.A. 442, 50 C.M.R. 461, 1 M.J. 58 (1975)];

4. The changing of the plea by the accused or on his behalf during the trial from Guilty to Not Guilty;

5. The refusal of the Court to accept the plea of Guilty.

2. The identity of the actual interviewer is not clear from the record. The interview is not reproduced in verbatim form for review by the

Court, and apparently the appellant was not represented by counsel during either the initial interview or the re-interview.

3. The appellant apparently referred to advice he had received from legal assistance officers on post that it would be desirable to secure housing in order to demonstrate "in kind" support for his dependent wife and children in order to comply with the support order which had been issued by an Ohio court. Specialist Five Lanzer further stated that he did not feel that he had really intended to defraud the government. These very matters, however, had been explored by the trial judge in detail during the providency inquiry, and the record demonstrates that the appellant pleaded guilty with a full understanding of the applicable law and the effect of his pleas. It further supports the trial judge's finding that SP5 Lanzer was fully cognizant that despite the potential desirability of demonstrating "in kind" support in his divorce proceedings, he was knowingly and intentionally securing funds and housing to which he was not entitled on the basis of information known to him to be untrue.

parts in criminal law. Since modern day administration of justice recognizes bargains for pleas as a judicial way of life,[1] the better rule demands maximum clarity; therefore, implications are disfavored.

[1] *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

In *Cox* we rejected the Government contentions that a pretrial agreement which neither mentioned nor established a condition requiring post-trial good conduct to effectuate the agreement contained such a provision by implication.[4] Recognizing the strong bargaining position the convening authority occupies, the Court has consistently held that pretrial agreements will be strictly enforced based upon the express wording of the agreement, and where the intention of the parties at the time of the agreement is clear, the agreement must be upheld. *United States v. Veteto*, 18 U.S.C.M.A. 64, 39 C.M.R. 64 (1968); *United States v. Hamill*, 8 U.S.C.M.A. 464, 24 C.M.R. 274 (1957).[5] We can do no less in this case, for we find that the appellant fully complied with each provision of his agreement with the convening authority, and, therefore, the convening authority was required to suspend the bad-conduct discharge.

■ The difficulties encountered in this case could well have been avoided by a proper appreciation of the Court's decision in *United States v. Care, supra*. The requirements of *Care* are two-fold: the first is a judicial determination of the providence of the plea; and the second is a total transcript of the plea inquiry for the purpose of review. We cannot accept the proposition that a post-trial review based upon an ex parte conversation can repudiate a proper *Care* inquiry;[6] this substitution of personnel in the office of a staff judge advocate or the convening authority for the trial judge simply does not rise to the stature of *Care*. In this case the appellant was fully questioned by the trial judge, and the facts admitted during the inquiry into his understanding of the elements and circumstances of the offenses support completely the judge's finding that the appellant fully and freely admitted his guilt with a clear understanding of all the ramifications of that decision.[7] *United States v. Dusenberry*, 23 U.S.C.M.A. 287, 49 C.M.R. 536 (1975).

■ Once a pretrial agreement is made it should not be modified except by judicial order, i. e. the trial judge. Compliance with the guidance we set forth in *United States v. Green*, 1 M.J. 453, 456 (1976), could preclude future occurrences of such unnecessary problems as are present in this case:

Judicial scrutiny of plea agreements at the trial level not only will enhance public confidence in the plea bargaining process, but also will provide invaluable assistance to appellate tribunals by exposing any secret understanding between the parties and by clarifying on the record any ambiguities which lurk within the agreements. More importantly, a plea bargain inquiry is essential to satisfy the statutory mandate that a guilty plea

---

4. Presumably the convening authority could require such a provision unless it was contrary to public policy. *See United States v. Rodgers*, 49 C.M.R. 268 (A.C.M.R.1974). The staff judge advocate's and convening authority's reliance upon the pre-*Care* case of *United States v. Richardson*, 15 U.S.C.M.A. 400, 35 C.M.R. 372 (1965), to set aside the findings and sentence and order a rehearing may well be proper; however, it does not serve to relieve the convening authority of his obligation to comply with the terms of the pretrial agreement after full compliance by the appellant. We cannot accept the proposition that the appellant has attempted to get "two bites at the apple," and, therefore, deny him relief.

5. *See United States v. Stovall*, 16 U.S.C.M.A. 291, 36 C.M.R. 447 (1966); *United States v. Franklin*, 41 C.M.R. 431 (A.C.M.R.1969).

6. As should be evident from the body of this decision we have doubts as to the vitality of post-trial interviews, especially those in which the accused does not have the benefit of counsel. Our disposition of this case makes it unnecessary to address this precise issue, and we will reserve judgment until the proper case.

7. The providence inquiry is further supported by the stipulation of fact signed by the appellant, his attorney, and the trial counsel, which was discussed by the trial judge before he accepted the plea.

not be accepted unless the trial judge first determines that it has been voluntarily and providently made. *See* Article 45(a), Uniform Code of Military Justice, 10 USC § 845(a). Finally we believe trial judges must share the responsibility, which until now has been borne by the appellate tribunals, to police the terms of pretrial agreements to insure compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness.

*See United States v. Elmore*, 1 M.J. 262, 264 (1976) (Fletcher, C. J., concurring).

■ The decision of the Army Court of Military Review as to the sentence is reversed. As the time for the required suspension of the bad-conduct discharge by the convening authority has long since passed,[8] in the interests of fundamental fairness and conserving judicial time and effort, we direct that no sentence be approved. *United States v. Cox, supra; United States v. Braxton*, 16 U.S.C.M.A. 504, 37 C.M.R. 124 (1967). The record is returned to the Judge Advocate General of the Army; all rights and privileges erroneously deprived should be restored.

PERRY, J., concurs.

COOK, Judge (dissenting):

I do not understand the majority opinion. As the majority accept the findings of guilty reached by the second court-martial, they apparently accept the legality of the rehearing ordered by the convening authority. For myself, I have no doubt that, confronted as he was with declarations by the accused amounting to a claim of innocence, the convening authority could, as he did, set aside the conviction and order a rehearing in the interests of justice.

In *United States v. Massey*, 5 U.S.C.M.A. 514, 18 C.M.R. 138 (1955), after his conviction the accused presented to the convening authority information disclosed by him while under the influence of sodium pentothal (truth serum) administered by a neuropsychiatrist, which tended to establish his innocence. The staff judge advocate advised the convening authority that he had no power to consider the information in connection with his review of the case. This Court held there was "no basis whatever for the suggestion that a convening authority, who may lawfully disapprove findings or sentence 'for *any* reason,' cannot permissibly utilize 'lie detector' or 'truth serum' results in determining on a course of action." *Id.* at 521, 18 C.M.R. at 145.

As the convening authority's ordering of a rehearing was indisputably legal, we confront the question of the continued viability of the pretrial agreement. The majority say that once a pretrial agreement is negotiated, it cannot be modified or eliminated "except by judicial order." That, in my opinion, is just not so. I believe that the agreement can be changed by mutual agreement of the accused and the convening authority. To me, therefore, it is essential to examine what the parties did in regard to the agreement.

On the basis of the record, I have no doubt whatsoever that before the court-martial convened for the rehearing, both the accused and the convening authority regarded the pretrial agreement as inoperative. The majority plainly imply that the convening authority's action in directing a rehearing on the ground that he did constituted a "repudiat[ion of] the terms of the agreement." What about the accused? What did he think of the binding nature of the agreement? It seems to me that, had he believed the agreement to be still in effect, he would have protested to the convening authority or to the trial judge that his post-trial declarations were misapprehended by the convening authority, and, that as far as he was concerned, he was guilty of the two offenses charged and would still abide by the terms of the agree-

---

8. The convening authority properly should have on February 14, 1975, the date of his action following the second trial, suspended the bad-conduct discharge for a period of 6 months, at which time, unless that suspension had been properly sooner vacated, it would have been remitted without further action.

ment. But, he made no such statement. Instead, when arraigned, contrary to the terms of his agreement, he entered a plea of not guilty. The only meaning I can ascribe to these actions is that the accused believed he was no longer bound by the agreement. His conduct convinces me that he joined with the convening authority to effect a mutual negation of the agreement.

If I err in the above perception of the facts, then I believe the accused is still not entitled to the benefits of the agreement. A rehearing is, for many purposes, merely a continuation of the original trial. *See United States v. Robbins*, 18 U.S.C.M.A. 86, 88, 39 C.M.R. 86, 88 (1969) (Ferguson, J.) The agreement here provided that it would "be automatically cancelled" if, among other things, the accused failed "to enter a plea of guilty" to both charges, or "changed his plea" during trial. Contrary to these provisions, the accused entered a plea of not guilty to both charges. As indicated earlier, I believe this plea was entered because the accused specifically acknowledged the prior abrogation of the agreement; but, if it was not that, it was an unqualified violation of its terms and *eo instanti* effected its cancellation. It follows, therefore, that at the time he reviewed the record of the rehearing, the convening authority was not bound by the agreement. I would affirm the decision of the Court of Military Review.