**UNITED STATES, Appellee,**

**v.**

**Private First Class David L. JAMES, SSN 431–21–9788, United States Army, Appellant.**

**CM 437997.**

U. S. Army Court of Military Review.

4 Dec. 1979.

---

Major Benjamin A. Sims, JAGC, Major Carlos A. Vallecillo, JAGC, and Captain Jacob J. Holeman, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, Major Michael B. Kennett, JAGC, and Captain Michael C. Chapman, JAGC, were on the pleadings for appellee.

Before JONES, CLAUSE and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

JONES, Senior Judge:

Pursuant to his pleas of guilty, the appellant was convicted of attempted rape, sodomy, and robbery in violation of Articles 80, 125, and 122, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 925 and 922. The military judge sentenced him to a dishonorable discharge, confinement at hard labor for fifteen years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1.

The issue with which we are concerned involves the interpretation and understanding by the parties of the sentence limitation provision of the pretrial agreement. The appellant entered his pleas of guilty pursuant to a pretrial agreement which provided for the convening authority—

> To suspend for the period of confinement plus one year, that portion of the adjudged sentence which provides for confinement at hard labor for a period in excess of 5 years, total forfeiture of pay and allowances in excess of 5 years, reduction to the grade of Private E–1, and dishonorable discharge.

The convening authority approved the sentence and suspended the confinement in excess of five years until the appellant's release from confinement and for one year thereafter.

This Court requested briefs on whether the convening authority was required by the terms of the pretrial agreement also to suspend the dishonorable discharge, the reduction in grade, and the forfeitures in excess of five years.[1] Counsel for the appellant and the Government both agree that the plain meaning of the agreement

---

1. There is also a question as to the period of suspension. Was it to run for the period of confinement *actually served* plus one year or for the period of confinement *adjudged* plus one year? The convening authority mooted this question by choosing the former interpre-

tation, the period most favorable to the appellant. We agree with appellant that that was the most logical intent of the parties. A suspension period of 16 years would have been unreasonable.

required the convening authority to suspend the discharge, forfeitures, and reduction, in addition to the confinement in excess of five years. They disagree on the corrective action that must now be taken.

The appellant argues that, as the language of the agreement is clear, this Court must give effect to it by suspending the discharge, forfeitures and reduction. He states that under the circumstances, the actual intent of the parties makes no difference. The Government on the other hand views the matter as an inadequate inquiry under *United States v. Green*, 1 M.J. 453 (C.M.A.1976), and contends that the record of trial should be returned to the convening authority for a revision proceeding to determine the intent of the parties.[2]

The general rule on enforcement of pretrial agreements is—

> that pretrial agreements will be strictly enforce based upon the express wording of the agreement, and where the intention of the parties at the time of the agreement is clear, the agreement must be upheld. (citations omitted). *United States v. Lanzer*, 3 M.J. 60, 62 (C.M.A. 1977).

To ascertain the intent of the parties, this Court obtained affidavits from the persons involved in the case.[3]

The convening authority's understanding of the agreement is expressed in his action on the case. He applied the suspension only to the confinement portion of the sentence.[4] His affidavit and common experience support this position for it defies logic to believe a convening authority would suspend a punitive discharge in a case like this. The staff judge advocate's and the trial counsel's affidavits are of similar import.

The appellant's understanding of the agreement as expressed in his affidavit is somewhat ambiguous. He is absolutely certain about the 5-year ceiling. This is logical as the period of confinement was undoubtedly his primary concern, facing as he did charges that carried a maximum of 40 years for offenses which usually resulted in substantial confinement. He states he did not know what was to happen to the non-confinement portions of the sentence.

The trial defense counsel's affidavit confirms that the focus of the discussions on the agreement centered on the period of confinement. He states he never discussed with the trial counsel or staff judge advocate an agreement to suspend the discharge, reduction, or forfeitures.

Several factors indicate that the defense's view of the agreement was similar to the government's. First, the defense counsel would not realistically have submitted a pretrial agreement which provided for suspension of the punitive discharge and reduction in a case involving attempted rape, robbery, and forcible sodomy. Second, the

---

2. After imposing sentence, the military judge made the following inquiry regarding the sentence limitation in the pretrial agreement:

> MJ: Could I see Appellate Exhibit II as to the quantum portion please?
> [TC hands MJ a document]
> Appellate Exhibit II states that the convening authority agrees to suspend for a period of confinement plus one year, that portion of the adjudged sentence, which provides for confinement at hard labor for a period in excess of five years, total forfeiture of pay and allowances in excess of five years, reduction to the grade of Private E 1 and a dishonorable discharge. Do you agree, I've correctly stated the terms of your pretrial agreement?
> ACC: Yes, sir.
> MJ: Counsel, is that your understanding of the pretrial agreement, is what I've stated?
> TC: Yes, sir.

> DC: Yes, sir.
> MJ: Okay, the case will be adjourned.
> Unfortunately, the military judge merely recited the terms of the sentence limitation without going into detail as to what those terms meant or what the parties intended.

3. The affidavits are included as an Appendix.

4. Suspension of the forfeitures is a normal concomitant of suspension of the confinement and the language in the agreement concerning forfeitures is similar to that concerning confinement (i. e., suspend all in excess of 5 years); however, the affidavits conflict on whether suspension of the forfeitures was contemplated by the parties. In any event, suspension of forfeitures in a situation such as this would normally be mooted by the change of appellant's pay status by the time the period of suspension expired.

defense counsel offered no comment or objection in his *Goode* [5] response to the staff judge advocate's post-trial review which recommended suspension only of the confinement in excess of five years. Further, when the convening authority took his action applying the suspension only to the confinement aspect of the sentence, neither the defense counsel nor the appellant made a complaint. Finally, appellate defense counsel did not assign as error before this Court the failure of the convening authority to comply with the terms of the agreement. Apparently, neither his reading of the agreement nor his contacts with the appellant and the trial defense counsel gave any indication that the convening authority's action was other than in accordance with the appellant's understanding of the agreement.

We believe that the Government and at least the trial defense counsel intended the suspension to apply only to the confinement portion of the sentence. We also believe this was undoubtedly discussed between the appellant and his counsel. However, we are also aware of the pressures on an accused during the trial and pretrial period and there exists the distinct possibility that he was oblivious to everything except the amount of confinement he would have to serve. Therefore, there was a potential for a misunderstanding as to the suspension of the discharge.

The potential for misunderstanding should have been recognized when the quantum portion of the sentence was reviewed. Because it was not and because the understanding and intent of the parties was not clarified, we must enforce the terms of the pretrial agreement as written, as the appellant now asks. [6] *United States*

*v. Lanzer, supra; United States v. Hamill,* 8 U.S.C.M.A. 464, 24 C.M.R. 274 (1957); *United States v. Franklin,* 41 C.M.R. 431 (A.C.M.R.1969). *Cf. United States v. Roman,* 22 U.S.C.M.A. 78, 82, 46 C.M.R. 78, 82 (1972). We will impose the suspension that should have been included in the convening authority's action. [7] *United States v. Cox,* 22 U.S.C.M.A. 69, 46 C.M.R. 69 (1972).

The other assigned errors have been considered and are without merit.

The findings of guilty are affirmed. Only so much of the sentence is affirmed as provides for dishonorable discharge, reduction to Private E–1, forfeiture of all pay and allowances, and confinement at hard labor for 15 years but the dishonorable discharge, reduction to Private E–1, forfeiture of all pay and allowances for a period in excess of 5 years, and confinement at hard labor for a period in excess of 5 years are suspended until the appellant's release from confinement and for one year thereafter, at which time, unless the suspension is sooner vacated, the suspended portion of the sentence will be remitted without further action.

Judge LEWIS concurs.

CLAUSE, Judge, dissenting in part:

I am satisfied beyond any doubt that none of the parties to the pretrial agreement bargained for or expected that a punitive discharge, if adjudged, would be suspended. The intent and expectations of the parties can be determined from their actions subsequent to trial as well as their post-trial affidavits. These facts are adequately set forth in the majority opinion. I am not disturbed by the confusion ex-

---

5. *United States v. Goode,* 1 M.J. 3 (C.M.A. 1975).

6. We have little doubt that had the suspension question been raised, the appellant, although he had not previously considered it, would have been most agreeable to pleading guilty in return for the suspension included by the plain language of the agreement. The Government on the other hand, on behalf of the convening authority, would undoubtedly have insisted that the suspension applied only to confine-

ment, or at least that it did not apply to the discharge.

7. We express no opinion as to the possible outcome of a situation wherein, either through the record of trial or evidence presented directly to this Court, all of the parties to a pretrial agreement clearly manifest a mutual intention that is at odds with the plain meaning of the written agreement.

pressed by the appellant in his affidavit. He is clear about his having to serve five years confinement and he certainly could have no doubt but that the remainder of the confinement was to be suspended. This was the extent of what he bargained for and all he could have expected. He does not now assert that he expected more. That he might subsequently have been unsure about the meaning of the wording of the agreement as to the other elements of the sentence or what he might expect the ultimate sentence to be is neither unusual or indicative of a misunderstanding of the terms of the actual bargain between the parties.

After an oral agreement had been reached by the parties, the trial defense counsel apparently wrote the pretrial offer which he erroneously worded. The government parties to the agreement then either negligently reviewed the wording or failed to read it at all prior to signing it. Being satisfied that the plea was free and voluntary and that there were no unfilled promises or expectations, and recognizing some degree of negligence on the part of all parties to the agreement, I see no need or purpose in providing a windfall to the appellant.

While I find no military case law specifically supporting my position, I do not believe that the limited case law in this area preclude our recognizing the actual intent of the parties. Not every misunderstanding surrounding a pretrial agreement must result in an improvident plea. *Cf. United States v. Partin,* 7 M.J. 409 (C.M.A.1979). Were there any doubt in this case, I would agree that our only recourse would be to resolve that doubt in favor of the appellant or determine the plea to be improvident. I am satisfied that the plea in this case was provident and I would affirm.

## APPENDIX

Following are the contents of affidavits obtained from persons involved in the case of *United States v. James* :

a. *Accused (Appellant).*

"When I was offered my pre-trial agreement I did not fully understand what I was agreeing to, even though I accepted it. Even after I was sent to the D.B. I still had questions about it, and even the people here didn't quite understand it. The main reason I took the pre-trial agreement was because I knew it would be a lesser amount of time than that which I would receive. The part I understood was that I would receive five years, but as far as the part about what they were suspending baffled me, because in my pre-trial agreement it states the following:

As the Convening Authority, I agree to take the following action in return for the accused's compliance with the terms of his offer to plead guilty:

To suspend for the period of confinement plus one year, that portion of the adjudged sentence which provides for confinement at hard labor for a period in excess of 5 years, total forfeitures of pay and allowances in excess of 5 years, reduction to the grade of Private E–1, and a Dishonorable Discharge.

I can truly say that I didn't know what to expect upon my release, or at the end of the 5 years."

b. *Convening Authority.*

"I am the Commander, V Corps, and the General Court-Martial Convening Authority in this case.

On or about 28 February my Staff Judge Advocate, Colonel Robert B. Smith, presented me with the offer to plead guilty in this case. While I do not now recall the precise circumstances of our conversation, I know that on the facts of this case I would never have concurred in any agreement that did not include an unsuspended punitive discharge."

c. *Staff Judge Advocate.*

"I am the Staff Judge Advocate, V Corps.

It is my plain recollection that in this case, as in every other guilty plea case I can recall, plea bargaining was at first oral, and

reduced to writing only after agreement was orally reached. It was and is my unequivocal understanding, that the final agreement was to suspend so much of the sentence as exceeded a dishonorable discharge, confinement at hard labor for five years, reduction to E1, and total forfeitures. Given the nature of the offense and the posture of the evidence, I would have found it unthinkable to recommend any agreement that did not include an approved unsuspended punitive discharge. I am equally certain that the convening authority would not have approved an agreement that did not include an unsuspended punitive discharge.

I would agree that the quantum portion of the offer could have been more artfully drawn, but I am entirely confident that it was intended by the defense to embody the terms of the oral bargain earlier reached. I took it as doing so, in spite of the apparent transposition of 'in excess of' from its rightful place. So did the Corps Commander, the convening authority, and the defense counsel, with whom I again discussed the history of the case on 7 September 1979, prior to his departure from this command. He confirmed that the only issue during plea bargaining was gaining for the accused the shortest possible confinement. There never was any question of suspending the punitive discharge."

d. *Trial Counsel.*

"THAT, at the time the offer was accepted it was my understanding (and intention) that the accused offered, and the convening authority agreed, to approve the adjudged sentence, except that portion of the sentence to confinement at hard labor for any period adjudged in excess of five years and to forfeiture of pay for any period adjudged in excess of 5 years, would be suspended. The period of suspension for both forfeiture and confinement was for the *actual* period of confinement served plus one year thereafter.

THAT, it was not my intention or understanding that reduction and discharge be suspended; nor do I believe such was the intention or understanding of any other interested party to the agreement (SJA, Convening Authority, Defense Counsel or Accused).

THAT, since I did not meet with the convening authority regarding this matter, I cannot make a statement directly in response to your inquiry (what did the convening authority agree to suspend), other than my belief that he agreed to suspend only the sentence to confinement and forfeiture consistent with my understanding of what transpired. This belief is predicated upon my discussions at the time with the defense counsel and the SJA. Throughout such discussions a suggestion to suspend any discharge was never given favorable consideration, if indeed it was even actually proposed."

e. *Trial Defense Counsel.*

"My representation of PV1 David L. James as detailed defense counsel in his General Court-Martial included several discussions with the trial counsel detailed to the case, CPT John Perrin, and with the V Corps Staff Judge Advocate, COL Robert Smith, regarding what sentence limitations the V Corps General Court-Martial Convening Authority would agree to should PV1 James make an offer to plead guilty in the form of a pre-trial agreement. My discussions with CPT Perrin and COL Smith on the quantum portion of the offer to plead and the pre-trial agreement always focused only on what limitations would possibly be placed on any confinement at hard labor. To the best of my knowledge, an agreement to suspend any forfeitures, reductions or discharges was never discussed by myself with either CPT Perrin or COL Smith."