Sidney M. AVIZ, 040 78 0761, Corporal (E–4), U.S. Marine Corps, Petitioner,

v.

C.L. CARVER, Colonel, U.S. Marine Corps, Military Judge, P.K. Vanriper, Brigadier General, U.S. Marine Corps, Convening Authority, and United States of America, Respondents.

NMCM No. 922823 M.

U.S. Navy–Marine Corps Court of Military Review.

Decided 12 Feb. 1993.

Capt Laulie S. Powell, USMC, Appellate Government Counsel.

Capt Craig D. Jensen, USMC, Detailed Defense Counsel.

Capt Dwight H. Sullivan, USMC, Appellate Defense Counsel.

LARSON, Chief Judge:

Petitioner seeks extraordinary relief in the nature of a Writ of Mandamus directing respondent military judge to reverse his order modifying the pretrial agreement in the petitioner's general court-martial or, in the alternative, directing respondent convening authority to suspend all adjudged confinement in excess of 180 days.

I

Charged with violations of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (alleging possession, distribution and use of marijuana) and Article 81, UCMJ, 10 U.S.C. § 881 (alleging conspiracy to possess marijuana), appellant, through his detailed defense counsel, submitted a pretrial agreement offer to the convening authority on 30 October 1992. The offer provided, in pertinent part, that "all confinement in excess of one hundred and eighty (180) days will be suspended for a period of twelve (12) months from the date of trial ..." The agreement offer was returned to the trial defense counsel unchanged except that "twelve (12)" was crossed out and "twenty-four (24)" was written by hand in its place. The agreement was signed "approved" by the convening authority.

Apparently believing that his 180–day cap offer had been countered with a 24–month cap by the convening authority, trial defense counsel submitted another offer proposing that confinement in excess of 18 months be suspended. That agreement was returned with the convening authority's signature, indicating "disapproved."

On 30 November, the petitioner pleaded guilty to all offenses as described in his original pretrial agreement offer before respondent military judge sitting alone. The military judge accepted his pleas following the inquiry into terms of the pretrial agreement mandated by *United States v. Green,* 1 M.J. 453 (C.M.A.1976), during which all parties affirmed that the agreement submitted 30 October 1992 was the sole agreement between the convening authority and the petitioner. Record at 28. After announcing the sentence, which included confinement for four years, the military judge examined the sentencing portion of the agreement. He stated that it appeared "clear and unambiguous" and that the convening authority would be required to suspend all confinement in excess of 180 days. The trial counsel immediately protested that the agreement between the parties was to suspend confinement in excess of 24 months and that the convening authority must have lined through the suspension period instead of the confinement period by mistake. He moved to withdraw from the agreement if the military judge were to hold the convening authority to the 180–day cap. The judge denied the motion to withdraw but continued the case until 7 December to allow counsel to propose solutions to the disagreement over the length of the confinement portion.

At the session on 7 December, the trial counsel moved to amend the written pretrial agreement to conform to the actual understanding of the parties. The petitioner's position was that the agreement should be enforced as written. After receiving representations from both the trial defense counsel and the petitioner that they both had understood that the agreement was to suspend confinement in excess of 24 months and after receiving written documentation which supported those representations, the military judge found, *inter alia,* that all parties had in fact agreed to the 24–month confinement period and that the convening authority had inadvertently lined through the wrong number. We find these conclusions well supported in the record and accept them for the purpose of determining the merits of this petition.

The military judge then granted the Government's motion to amend the actual agreement which would authorize the convening authority to suspend confinement in

excess of 24 months. The petitioner now turns to this Court to enforce the express written terms of the pretrial agreement through the mechanism of extraordinary relief. Were we to grant the petition, the appropriate procedure would be to return the record of trial to the military judge to correct his ruling in accordance with this opinion because he has not yet authenticated the record and, therefore, still retains the power to revise the proceedings. *United States v. Brickey*, 16 M.J. 258 (C.M.A. 1983).

## II

This Court has the authority to grant the relief requested under the All Writs Act, 28 U.S.C. § 1651(a), to ensure the integrity of the judicial process. *Dettinger v. United States*, 7 M.J. 216 (C.M.A. 1979); *United States v. Thomas*, 33 M.J. 768 (N.M.C.M.R.1991). However, a Writ of Mandamus is a drastic remedy that should be used only in truly extraordinary situations. *United States v. Labella*, 15 M.J. 228 (N.M.C.M.R.1983). In particular, it should not be invoked in cases where other authorized means of appeal or administrative review exist. *Coffey v. Commanding Officer, USS Charleston*, 33 M.J. 938 (N.M.C.M.R.1991). To justify extraordinary relief, the petitioner bears the burden of demonstrating that he is entitled to it as a clear and indisputable right. *Thomas*, 33 M.J. at 770; *Smithee v. Vorbach*, 25 M.J. 561 (C.G.C.M.R.1987).

In this case, to satisfy this burden, the petitioner must demonstrate to this Court that he is clearly and indisputably entitled to enforcement of the express written confinement limitation in his pretrial agreement even though that limitation appears as the result of a mistake and does not reflect the actual confinement limitation to which all parties had originally agreed. In addition, he must demonstrate that enduring the normal pace of appellate review under Article 66, UCMJ, 10 U.S.C. § 866, will effectively deny him the relief to which he is entitled. We need not reach the second prong of this burden because we find that the petitioner has not satisfied the first.

## III

The military judge has an established duty in military law to inquire into the terms of a pretrial agreement on the record to ensure that his understanding of those terms comports with the understanding of all the parties. *Green; United States v. King*, 3 M.J. 458 (C.M.A.1977); Rule for Courts–Martial (R.C.M.) 910(f). Put in contract terms, he has a duty to ensure that there has been a "meeting of the minds" of the parties with respect to the terms of the agreement. As to the sentencing limitation terms in particular, in a trial before military judge alone, the judge is advised by case law and R.C.M. 910(f)(3) to examine them after sentence is announced and to reopen the inquiry to cover those terms specifically. *Green*, 1 M.J. at 455. If a common understanding of the meaning of those terms cannot be reached, the judge shall conform the agreement to the accused's understanding with the consent of the Government, or permit the accused to withdraw his guilty pleas. R.C.M. 910(h)(3). In addition to this objective of ensuring a common understanding among the parties, the military judge is required to police the agreement to ensure it contains no provision that is contrary to public policy, *United States v. Holland*, 1 M.J. 58 (C.M.A.1975), to fundamental fairness, *United States v. Callaway*, 21 M.J. 770 (A.C.M.R.1986), or to statutory or decisional law, *United States v. Zelenski*, 24 M.J. 1 (C.M.A.1987).

It is also well established in military law that a military judge has the power to modify a pretrial agreement. *United States v. Lanzer*, 3 M.J. 60 (C.M.A.1977). It is apparent that such a power is necessary if the judge is to successfully carry out the duties described in the preceding paragraph. It is also apparent that, in exercising his power to modify the agreement in order to conform to the understanding of the parties in particular, the military judge is authorized to conduct an evidentiary hearing to determine objectively just what that understanding was. *See*

*United States v. Gonzales–Hernandez,* 481 F.2d 648 (5th Cir.1973); *United States v. Llewellyn,* 27 M.J. 825 (C.G.C.M.R.1989). In fact, the proper forum to resolve disputes of this nature is the trial court, and the proper time is before proceedings are adjourned. *United States v. Simmons,* 537 F.2d 1260 (4th Cir.1976); *Green.* Of course, the power to modify an agreement should be exercised cautiously and must not be used to add provisions not agreed to by the parties or, in any manner, to defeat their understanding of the terms. *United States v. Partin,* 7 M.J. 409 (C.M.A.1979).

■ In applying these principles to the petitioner's case, we hold that the military judge did not err when he modified the written agreement to conform to the understanding that had been reached by the parties before trial commenced. When faced with this unusual situation where one party asserts that a written term of the agreement does not reflect the term to which the parties in fact agreed, he recessed the court to give both parties an opportunity to assess their positions. He then received evidence that bore directly on the intent of the parties, conducted further inquiry of the accused under R.C.M. 910(f) and heard argument to ensure that he was on solid footing when he conformed the confinement limitation term to the common understanding of all parties.[1]

## IV

Petitioner's principal arguments in favor of enforcement of the written confinement limitation of 180 days are summarized as follows: 1) That case law permitting a military judge to modify a pretrial agreement applies only in cases where a term violates a bedrock standard, e.g., public policy or when it is ambiguous, not, as in this case, when a term is clear on its face, *Lanzer;* 2) That notions of fundamental fairness dictate the result that the convening authority be bound by the agreement in writing, mistakes and all; and 3) That common law principles of contract law do not permit a party to escape liability for his own mistakes. We address these points seriatum.

■ First, we see no need to limit the power of the military judge to modify an agreement to only those situations where a provision must be stricken as violative of the bedrock standards cited above or where a term is ambiguous.[2] The duty facing the judge in this case was to ensure that the written agreement actually reflected the understanding of the parties. Once he determined just what that understanding was—objectively, from the facts of record—it would defy reason to say that he was precluded from modifying the agreement to comport with it. On the other hand, had he determined that the parties did not share the same understanding of the term in question and further, that neither party would agree to the other's interpretation, then he would have been required to declare the written pretrial agreement a nullity and to allow the accused to withdraw his pleas of guilty. R.C.M. 910(h)(3).

1. In fact, we cannot conceive how the military judge could have handled this unusual dilemma better. We commend him for the thorough and judicious manner in which he resolved the issue.

2. Petitioner is correct in distinguishing the case law dealing with the interpretation of ambiguous terms in a pretrial agreement. Petitioner's Brief at 5. No term in this agreement was ambiguous—neither the printed limitation of 180 days nor the actual agreed term of 24 months—and, therefore, no interpretation by the military of the meaning of any term was necessary. This was a simple question of fact as to whether the written term in the agreement was the term to which the parties had in fact agreed. It was not a disagreement over the meaning of a term as in *United States v. Rascoe,*

31 M.J. 544 (N.M.C.M.R.1990) (fine enforcement provision) or over the practical effect of a term on the convening authority's options as in *United States v. Cabral,* 20 M.J. 269 (C.M.A.1985) (effect of agreement to suspend reduction in grade on administrative regulations that require reduction in grade) or over the effect of the agreement's silence as to a term as in *United States v. Elliott,* 10 M.J. 740 (N.M.C.M.R.1981) (agreement silent on the effective date of suspension). However, distinguishing this "ambiguous term" case law does not advance the petitioner's cause, because he loses the applicability of the rule in those cases that requires ambiguities to be resolved in favor of the accused. *See United States v. Whitekiller,* 8 M.J. 772 (N.M.C.M.R.1979).

Second, the principle of fundamental fairness is, of course, central to the military judge's inquiry into the terms of a pretrial agreement. *Partin.* However, that principle entitles the petitioner to no more than the benefit of his bargain and, in particular, it does not entitle him to the windfall he would receive were we to enforce the 180–day confinement cap. The military judge took great pains to ensure that the petitioner did in fact bargain for a 24–month cap. Record at 94. The law will guarantee him no more than that. Furthermore, there are two parties to a pretrial agreement and the notion of fundamental fairness applies to both. It would be most unfair to deny the convening authority the benefit of his bargain, made on behalf of the United States, solely because of a clerical error that did not mislead the petitioner or work in any manner to his disadvantage.

Finally, as to the applicability of the principles of contract law, the criminal courts have often turned to these principles to "supply the body of doctrine necessary to order plea bargaining practices and to afford relief to defendants aggrieved in the negotiating process." *Cooper v. United States,* 594 F.2d 12, 15–16 (4th Cir.1979). In particular, our military courts have borrowed from contract law to justify close scrutiny of the pretrial agreement process to ensure that the Government is not negotiating with unfair advantage. *United States v. Dawson,* 10 M.J. 142 (C.M.A. 1981). There is a limit to the application of contract law to pretrial agreements in criminal cases, *Johnson v. Beto,* 466 F.2d 478 (5th Cir.1972), and in some ways, a criminal accused is entitled to more protection by the law than a party to a contract because of the constitutional implications attendant to a criminal trial. *United States v. Koopman,* 20 M.J. 106 (C.M.A.1985).

In this case, the law of contracts provides the petitioner no support. The error in this pretrial agreement, in which the written agreement does not reflect the actual agreement between the parties, is a called a "mistake of expression." 17 C.J.S. *Contracts* § 142 (1963). The law permits the judge to modify such a mistake to reflect the parties' actual understanding. *Id.* Furthermore, we know of no principle of contract law that entitles one party to a benefit for which he did not bargain simply because of a clerical mistake upon which he did not suffer detrimental reliance. In the end, there is little need to resort to contract analysis because the underlying contract principle that applies here—that the petitioner is entitled to the benefit of his bargain—is already guaranteed if the notion of fundamental fairness in the pretrial agreement process is honored. In this case, the evidence of record tells us that it was.

V

It may be helpful to contrast the petitioner's case with the situations faced by our Army brethren in two cases with similar facts but with one crucial difference. In *United States v. James,* 8 M.J. 637 (A.C.M.R.1979), the convening authority approved a pretrial agreement submitted by the defense which provided that confinement in excess of five years, forfeitures in excess of five years, reduction to E–1 and a dishonorable discharge were to be suspended. The convening authority suspended only the confinement in excess of five years. After the issue was specified by the Court on appeal, the Government argued that both parties had intended the suspension to apply solely to the confinement and offered affidavits from the convening authority to that effect. The appellant and his trial defense counsel stated in affidavits that the confinement cap had been their only real concern and that they had no understanding as to the remaining portions of the sentencing agreement. The Court held that the absence of a clarification of the understanding and intent of the parties on the record dictated that the express language of the agreement must be enforced. *Id.* at 640. Likewise, in *United States v. Davis,* 20 M.J. 903 (A.C.M.R. 1985), the absence of any understanding or intent on the record that was contrary to the plain meaning of the sentence-approval provision—wherein the convening authority had lined through the words "bad-conduct

discharge"—required the Court to enforce those express words and disapprove the discharge. In both cases, the Army Court stated that it expressed no opinion as to the outcome in a case where a clear understanding contrary to the plain meaning of the agreement was placed on the record. We have that very situation here, and we consider the presence of clear evidence of the parties' understanding on the record to be the feature of the petitioner's case that distinguishes it from *James* and *Davis*.

■ Before leaving this matter, there is an attendant issue to be resolved. Once the military judge modified the pretrial agreement contrary to petitioner's desires, was he obligated under R.C.M. 910(h)(3) to allow the petitioner to withdraw his guilty pleas? Both the petitioner and the respondents concur that the military judge was not so required. This conclusion, with which we concur, is supported by the plain wording of R.C.M. 910(h)(3) which permits plea withdrawal if the military judge does not conform the agreement to the accused's understanding. Here, the agreement was modified to conform with the petitioner's understanding. The fact that the modification is not in accordance with his current desires affords him no entitlement to withdraw. In addition, we note that the fundamental reason for withdrawal under R.C.M. 910(h)(3) is that the pleas would be improvident if they were based upon a term in the pretrial agreement to which the accused had not in fact agreed. *Green.* Here, that reason does not apply. Finally, we note that the petitioner made no request to withdraw his pleas and has not done so to this date.

Accordingly, the petition for extraordinary relief is denied.

Senior Judges STRICKLAND and ORR concur.