**UNITED STATES, Appellee,**

v.

**Derreck D. BYRD, Jr., 422 02 5562, Hospital Corpsman Third Class (E-4), U.S. Navy, Appellant.**

**NMCM 9500907.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

8 April 1999.

---

SEFTON, Chief Judge:

After careful consideration of the Government's Motion to Terminate Appellate Review of 19 February 1999, appellant's response, and the excellent oral arguments by counsel before us, it is, by the court, this 8th day of April, 1999,

ORDERED:

That the Government's motion is granted. This court's previous mandate of 20 November 1998 is rescinded and the Government is no longer required by this court to conduct a post-trial *DuBay* [1] hearing.

On 15 October 1996, this court affirmed the findings and sentence of appellant's 12 January 1995 general court-martial. A copy of this decision was mailed to appellant and his counsel. By rule of the United States Court of Appeals for the Armed Forces (CAAF), the appellant had 60 days to petition CAAF for review. CAAF RULE 19. Prior to filing a petition for review, the 60–day window expired, and on 2 January 1997,

---

1. *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

his convening authority, the Navy–Marine Corps Appellate Review Activity, issued a supplemental court-martial order ordering the execution of appellant's bad-conduct discharge, and discharged him.[2]

Despite the execution of his sentence and his discharge, appellant petitioned CAAF for review on 22 January 1997. CAAF granted review over Government objection,[3] and on 30 March 1998, this court's decision was set aside. In a remand dated 20 November 1998, this court, in accordance with the direction of CAAF, ordered a *DuBay* hearing to help us resolve the issue of whether the appellant was deprived of his Sixth Amendment right to effective assistance of counsel.[4]

On 19 February 1999, the Government, for the first time, informed this court that appellant was discharged on 2 January 1997. The Government now asks that appellate review be terminated for lack of *in personam* jurisdiction.[5]

The issues before the court are novel, and best framed as follows: Does the lawful Government action of executing a sentence that includes a discharge preclude further appellate review? Does the concept of "continuing jurisdiction" allow for appellate review to continue despite the execution of appellant's sentence? If not, should this court, *sua sponte*, issue a writ to accomplish the previously ordered relief? *United States v. Montesinos*, 28 M.J. 38, 44 (C.M.A.1989).

## DISCUSSION

### 1. Does the Court have Article 66(c), UCMJ, Jurisdiction?

a.  Untimely Filing to CAAF

In *United States v. Myers*, 28 M.J. 191 (C.M.A.1989), our superior Court ad-dressed the issue of continuing review despite an untimely petition to CAAF. There, appellant could not be located, and a copy of the Court of Criminal Appeals decision was not served on him. His counsel petitioned CAAF, but did so outside the 60–day window. The decision is unclear as to whether or not Myers was separated subsequent to Article 66(c), UCMJ, review. CAAF did not grant review, but stated that "we will not refuse a member the right to file a petition for grant of review where he can show that he acted within 60 days of the date he received **actual** notice [of the Court of Criminal Appeals decision]." *Myers*, 28 M.J. at 195 (C.M.A.1989)(emphasis added).

Our superior Court has also indicated that where Government counsel does not oppose a petition to CAAF out-of-time, and where the motion to file out-of-time establishes good cause for filing late and states with some specificity the issues on appeal, CAAF will grant such petitions. *United States v. Sumpter*, 22 M.J. 33, 34 (C.M.A.1986). Appellant's status in *Sumpter* as to discharge is likewise unclear.

In the present case, appellant was afforded review in accordance with Article 66(c), UCMJ, and petitioned CAAF outside of the 60–day window without observing the requirements provided in *Sumpter*, nor those in *Myers* which specifically require an appellant to demonstrate timely filing to CAAF within the 60–day window or good cause for filing late. *Myers*, 28 M.J. at 195. Appellant offers no such indication here and we find none in the record. We find that appellant was served his copy of this court's decision by 25 October 1996 and was lawfully separated on 02 January 1997, by virtue of a judicial-

---

2.  Normally, such court-martial orders are enclosed in the Record of Trial; however, this document was not made part of the record until the Government's Motion to Attach of 19 Feb 1999. Even then, the original document was not attached.

3.  Though the Government opposed the appellant's petition to CAAF in January 1997, it did not offer lack of jurisdiction or untimely filing as a reason to deny review.

4.  Whether the appellant was deprived effective assistance of counsel was an issue decided against appellant prior to remand. CAAF set aside and remanded that decision because it was made without the guidance of *United States v. Ginn*, 47 M.J. 236 (1997), decided subsequent to our initial Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c), review.

5.  We note that the Government has not petitioned CAAF to reconsider their remand of 20 November 1998 on the basis of lack of jurisdiction.

ly ordered action under Article 66(c), UCMJ. CAAF, therefore, unknowingly granted review where it had no apparent jurisdiction to do so. In our view, the rationales of *Sumpter* and *Myers* are contingent on CAAF otherwise having jurisdiction to hear the matter.

**b. The Theory of "Continuing Jurisdiction"**

Appellant, however, cites a line of cases for the proposition that the earlier actions of CAAF and our court on remand are permissible under the theory of "continuing jurisdiction." Our Army brethren recently confronted a case where an appellant was charged and arraigned before a special court-martial. Prior to entry of pleas, the appellant was discharged administratively by a different command. The military judge ruled as a matter of law that discharge could not occur before the charges were resolved. Appellant thereafter filed a petition for extraordinary relief. The Army court issued a writ of prohibition and held that the Army had no jurisdiction to try him. *Vanderbush v. Smith*, 45 M.J. 590 (Army Ct.Crim.App. 1996), *aff'd*, *Smith v. Vanderbush*, 47 M.J. 56 (1997). Though *Vanderbush* discusses jurisdiction to try an accused who had been administratively discharged, CAAF noted in dicta that "the concept of *continuing jurisdiction may* be applied for the limited purpose of permitting appellate review and the execution of the sentence in the case of someone who was tried and convicted while in a status subject to the UCMJ." *Vanderbush*, 47 M.J. at 59 (citing *Carter v. McClaughry*, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236 (1902); *United States v. Montesinos*, 28 M.J. 38, 46 (C.M.A.1989); *United States v. Jackson*, 3 M.J. 153 (C.M.A.1977))(emphasis added).

Here, court-martial jurisdiction terminated subsequent to Article 66(c), UCMJ, review, as a consequence of an act of a judicial character, not pursuant to command action. *United States v. Woods*, 21 M.J. 856, 870 (A.C.M.R.1986), *aff'd*, 26 M.J. 372 (C.M.A. 1988)("[I]t requires an act of judicial character ... to affirm or disaffirm their findings

or sentence on appellate review, or to otherwise abate them after jurisdiction has attached."). We distinguish *Vanderbush* where, as here, acts of judicial character resulted in the termination of jurisdiction. When jurisdiction terminated in this manner (*i.e.*, execution of a punitive discharge), our superior Court was divested of authority, absent the issue of an extraordinary writ, to decide and remand this case to us.[6] We hold that jurisdiction for continued review was extinguished subsequent to the lawful execution of appellant's discharge and his attendant separation.

**2. Extraordinary Writ Jurisdiction**

In addition to our normal appellate jurisdiction, we have the authority to issue extraordinary writs under the All Writs Act when "necessary or appropriate in aid of [our] jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *Dettinger v. United States*, 7 M.J. 216 (C.M.A.1979); *Kelly v. United States*, 1 M.J. 172 (C.M.A.1975); *Henderson v. Wondolowski*, 44 C.M.R. 117 (1971); *Aviz v. Carver*, 36 M.J. 1026, 1028 (N.M.C.M.R.1993). The All Writs Act "expressly declares and recognizes the existence of ancillary authority which all courts possess as an incident of their existence as a court to protect their respective jurisdictions otherwise conferred." *United States v. Draughon*, 42 C.M.R. 447, 1970 WL 7129 (A.C.M.R.1970). Since Congress conferred our appellate jurisdiction in Articles 62, 66, and 69, UCMJ, the All Writs Act explicitly recognizes our authority to grant extraordinary relief "in aid" of that statutory jurisdiction. *United States v. Frischholz*, 16 U.S.C.M.A. 150, 36 C.M.R. 306, 308 (1966)("The All Writs Act merely makes 'explicit the right to exercise powers implied from the creation of such courts.'")

■ Our authority to issue extraordinary writs "in aid of jurisdiction" under the All Writs Act is not limited to our actual or potential appellate jurisdiction defined in Articles 62, 66, and 69, UCMJ. *See McPhail v.*

---

6. Appellant argues that we should presume CAAF determined that this was a case of continuing jurisdiction or granted an extraordinary writ in aid of its jurisdiction, and that we are, therefore, bound by the remand. Despite the language of *United States v. Shavrnoch*, 49 M.J. 334, 338 n. 3 (1998), we decline to apply this presumption knowing that we are armed now, for the first time, with facts of record that CAAF was not privy to when they ruled.

*United States,* 1 M.J. 457, 462 (1976). These statutory provisions do not encompass our entire authority as a court. As the highest judicial tribunal in the Department of the Navy's court-martial system, we are expected to fulfill an appropriate supervisory function over the administration of military justice. *Noyd v. Bond,* 395 U.S. 683, 693–98, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969). The concept of supervisory jurisdiction as support for extraordinary writ authority under the All Writs Act has developed primarily in cases decided by our superior Court. *See Unger v. Ziemniak,* 27 M.J. 349 (1989); *Murray v. Haldeman,* 16 M.J. 74 (C.M.A. 1983). Though not petitioned, we do possess the jurisdiction to exercise writ jurisdiction despite the lawful execution of a sentence subsequent to Article 66(c), UCMJ, review.

### 3. Exercise of Extraordinary Writ Jurisdiction

■ Although we conclude that we may exercise extraordinary writ jurisdiction, we must determine whether extraordinary relief should be granted. One who seeks a writ must present truly extraordinary matters justifying it. Under our All Writs Act supervisory jurisdiction, a petitioner must present compelling reasons why it is "necessary and appropriate" that we grant relief. A writ constitutes a "drastic instrument which should be invoked only in truly extraordinary situations." *United States v. Labella,* 15 M.J. 228, 229 (C.M.A.1983); *see generally Murray v. Haldeman,* 16 M.J. 74 (C.M.A. 1983); *Aviz v. Carver,* 36 M.J. 1026, 1028 (N.M.C.M.R.1993). Because of their extraordinary nature, writs are issued sparingly, and a petitioner bears an extremely heavy burden to establish a clear and indisputable entitlement to extraordinary relief. With these general principles in mind, we examine what criteria might justify extraordinary relief under the most appropriate theory—*writ of error coram nobis.*

■ *Coram nobis* is neither a substitute for ordinary appeal nor a device to restart the appellate process, *see Nkosi v. Lowe,* 38 M.J. 552 (A.F.C.M.R.1993), but an extraordinary remedy predicated on exceptional circumstances not apparent to the court in its original consideration of the case. *Frischholz,* 36 C.M.R. at 309. *Coram nobis* "involves no more than a court reconsidering its own acts to avoid a miscarriage of justice." *See U.S. v. Draughon,* 42 C.M.R. 447, 453 (A.C.M.R.1970).

■ "Under *coram nobis,* a court can remedy an earlier disposition of a case flawed because the court misperceived or improperly assessed a material fact." *McPhail,* 1 M.J. at 459. Petitioner must establish that the matter was unknown to him and not apparent to the court at the time the court first considered the case. The error must be so fundamental as to render the proceedings themselves irregular and invalid. *Chapel v. United States,* 21 M.J. 687 (A.C.M.R.1985).

Society has a strong interest in the finality of appeals. As our sister service court stated earlier:

> The standard for obtaining relief through a writ of error coram nobis is more stringent than the standard applicable on direct appeal. As a result, an error which would justify relief during normal appellate review will not necessarily trigger coram nobis relief.

*Chapel,* 21 M.J. at 689 (citations omitted).

■ We do not find compelling reasons to grant a writ in this case. Although the prevailing view is to liberally grant out-of-time filings,[7] *see, e.g., United States v. Ortiz,* 24 M.J. 323, 325 (C.M.A.1987), reasonably foreseen consequences of such filings could be avoided with due diligence. In this case, appellant's failure to timely file resulted in a lawful execution of his sentence, a lawful discharge, and the loss of jurisdiction and right to appeal.[8] Appellant's lack of due diligence is not such an extraordinary cir-

---

7. We note that the appellant did not indicate to our superior Court that his petition was filed out-of-time. We further note that the Government did not draw this fact to the attention of our superior Court.

8. Due to this issue on lack of jurisdiction over appellant, counsel indicated during oral argument that appellant cannot be ordered to attend a *DuBay* hearing.

cumstance as to require relief using this "drastic remedy" and we decline to do so here. While we find no compelling reason for the Government's failure to make appellant's discharge known in a timely manner, we likewise find appellant's unwillingness to inform appellate courts of his status should not now be rewarded by further review. Although we are troubled by the serious nature of the error asserted concerning effectiveness of counsel, we do not find an ability to confer jurisdiction where none exists, or to exercise extraordinary writ powers absent a proper predicate.

Accordingly, the Government motion to terminate appellate review is granted. The previously ordered mandate to conduct a *DuBay* hearing is hereby rescinded.

Judge TROIDL and Judge ROLPH concur.

UNITED STATES

v.

**Jeremy E. BORACCI, 544–84–5659, Utilitiesman Constructionman (E–3), U.S. Navy.**

**NMCM 98 00810.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 17 Sept. 1997.

Decided 9 April 1999.

LT Frank M. Doherty, JAGC, USNR, Appellate Defense Counsel.

LT James E. Grimes, JAGC, USNR, Appellate Government Counsel.