*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HUTCHISON, TANG, and LAWRENCE,
Appellate Military Judges.

_____

**In Re Shanon L. BEST**
Master Chief Hospital Corpsman (E-9), U.S. Navy
Petitioner

**UNITED STATES**
Respondent

**No. 201600134**

Decided: 14 June 2019.

Review of Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus. Military Judge: Captain Robert J. Crow, JAGC, USN. Sentence adjudged 4 November 2015 by a general court-martial convened at Naval Air Station Jacksonville, Florida, consisting of officer members. Sentence approved by convening authority: confinement for 30 years and a dishonorable discharge.

For Appellant: Lieutenant R. Andrew Austria, JAGC, USN.

For Appellee: Lieutenant Clayton S. McCarl, JAGC, USN

Senior Judge HUTCHISON delivered the opinion of the Court, in which Senior Judge TANG and Judge LAWRENCE joined.

_____

**PUBLISHED OPINION OF THE COURT**

_____

HUTCHISON, Senior Judge:

Petitioner, a member of the U.S. Navy confined at the United States Disciplinary Barracks, Fort Leavenworth, Kansas, seeks extraordinary relief from this court in the nature of a writ of habeas corpus under the All Writs Act, 28 U.S.C. § 1651(a). Petitioner claims that his immediate release from confinement is required in light of the Court of Appeals for the Armed Forces' (CAAF) decision in *United States v. Mangahas*, 77 M.J. 220 (C.A.A.F. 2018), because he was improperly convicted of charges for which the statute of limitations had expired. In the alternative, he seeks a rehearing so that he may properly raise the issue of the expired statute of limitations in light of *Mangahas*.

We disagree. We find that while we have jurisdiction to consider this petition, the CAAF's ruling in *Mangahas* is one of procedure and therefore without retroactive effect to a case which had already completed direct appellate review. As such, petitioner is not entitled to relief.

## I. BACKGROUND

Petitioner was charged with, *inter alia*, two specifications of raping his stepdaughter, LN, over the course of several years, beginning when she was a child. Charge I, Specification 1, alleged rape on divers occasions between 5 December 1999 and 4 December 2003, when LN was between the ages of 12 and 16, and Charge I, Specification 2, alleged rape on divers occasions between 5 December 2003 and 30 September 2007, after LN had turned 16. The sworn charges were received by the officer exercising summary court-martial jurisdiction on 3 April 2015.

On 4 November 2015, a panel of officer members sitting as a general court-martial convicted petitioner, contrary to his pleas, of two specifications of rape and one specification of obstruction of justice, in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2000) and 10 U.S.C. § 934 (2012),[1] respectively. The convening authority (CA) approved the adjudged sentence of 30 years' confinement and a dishonorable discharge and, with the exception of the dishonorable discharge, ordered it executed.

On direct appeal, after considering the assignments of error raised by petitioner and conducting our own review under Articles 59 and 66, UCMJ, we

---

[1] Unless otherwise indicated, all citations to the UCMJ are to articles in effect in 2015. Several articles were substantially revised or, in the case of Article 71, entirely repealed by the Military Justice Act of 2016. These revised articles, which are printed in 2019 edition of the Manual for Courts-Martial, are generally applicable only to cases referred to court-martial on or after 1 January 2019.

affirmed the findings and sentence. *United States v. Best*, 2017 CCA LEXIS 345 (N-M. Ct. Crim. App. 2017) (unpub. op.). The petitioner sought review of his case at the CAAF, which was denied. *United States v. Best*, 77 M.J. 20 (C.A.A.F. 2017). He then petitioned the Judge Advocate General of the Navy for a new trial pursuant to Article 73, UCMJ, which was also denied.

Petitioner remains confined at the United States Disciplinary Barracks, Fort Leavenworth, Kansas, with a normal release date of 2 November 2045. The petitioner's dishonorable discharge has not yet been executed.

## II. DISCUSSION

### A. Jurisdiction

"Every federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction." *Loving v. United States*, 62 M.J. 235, 239 (C.A.A.F. 2005) (alteration in original) (internal quotation marks omitted) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). In evaluating our jurisdiction, we begin with the Constitution, recognizing that this court was established by Congress acting under Article I. *Loving*, 62 M.J. at 239. "Article I courts are courts of special jurisdiction created by Congress that cannot be given the plenary powers of Article III courts. The authority of the Article I court is not only circumscribed by the Constitution, but limited as well by the powers given to it by Congress." *Id.* (citation omitted).

Our sister courts' decisions in *Chapman v. United States*, 75 M.J. 598 (A.F. Ct. Crim. App. 2016), and *Gray v. Belcher*, 70 M.J. 646, 647 (Army Ct. Crim. App. 2012), analyzed *Loving* and the Supreme Court's decision in *United States v. Denedo*, 556 U.S. 904 (2009), and concluded that they were without jurisdiction to entertain writs of habeas corpus after a court-martial was final under Article 76, UCMJ. We directed the parties to specifically brief whether we have jurisdiction to consider this petition.

In order to determine whether we have proper jurisdiction over the present petition, we first analyze the sources of our authority, including the All Writs Act, 28 U.S.C. § 1651, and our statutory jurisdiction provided by Article 66, UCMJ. We then examine Article 76, UCMJ, to determine whether the petitioner's court-martial is final.

#### 1. The All Writs Act

The All Writs Act authorizes "all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see also Denedo*, 556 U.S. at 911; RULE FOR COURTS-MARTIAL (R.C.M.) 1203(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.), Discussion. "[M]ilitary

courts, like Article III tribunals, are empowered to issue extraordinary writs under the All Writs Act." *LRM v. Kastenberg*, 72 M.J. 364, 367 (C.A.A.F. 2013) (alteration in original) (quoting *Denedo*, 556 U.S. at 911). The All Writs Act does not, however, provide "an independent grant of jurisdiction, nor does it expand [our] existing statutory jurisdiction." *Id.*

### 2. Statutory jurisdiction

We first look to Article 66, UCMJ, which establishes the subject matter jurisdiction for the military courts of criminal appeals. Article 66(b) states,

> The Judge Advocate General shall refer to a Court of Criminal Appeals the record in each case of trial by court-martial—(1) in which the sentence, as approved, extends to death, dismissal of a commissioned officer, cadet, or midshipman, *dishonorable or bad-conduct discharge, or confinement for one year or more*; and (2) except in the case of a sentence extending to death, the right to appellate review has not been waived or an appeal has not been withdrawn under section 861 of this title (article 61).

(Emphasis added). Indeed, this case was previously referred to our court pursuant to this provision, and we affirmed petitioner's conviction. *Best*, 2017 CCA LEXIS 345. As his appeal to CAAF was denied, *Best*, 77 M.J. 20, there is a final judgment as to the legality of the proceedings under Article 71, UCMJ.[2] However, our superior court explained that a final judgment, under Article 71, UCMJ, is distinct from "finality" under Article 76, UCMJ. *Loving*, 62 M.J. at 240. "[F]inality under Article 76 [is] the terminal point in the proceedings [while] 'a final judgment as to the legality of the proceedings' under Article 71(c)(1) . . . establishes the point of completion of the direct legal review." *Id.*

In *Loving*, a death penalty case, the CAAF determined that the military courts had jurisdiction over habeas corpus petitions after final judgment but before the case is final under Article 76, UCMJ. "As finality under Article 76 is the terminal point for proceedings within the court-martial and military justice system, . . . jurisdiction continues until a case is final." *Id.* The court held that because Article 76, UCMJ, required that the President approve a death sentence before the sentence is final, and the President had not yet done so, the case was not final and the court had jurisdiction. "Implicit in this conclusion was that if the proceedings were final under Article 76, UCMJ, the military courts would not have jurisdiction." *Chapman,* 75 M.J. at 600.

---

[2] Article 71(c)(1) provides in pertinent part, "A judgment as to legality of the proceedings is final in such cases when review is completed by a Court of Criminal Appeals and . . . a petition [for review] is rejected by the Court of Appeals for the Armed Forces."

In *Chapman*, the Air Force Court of Criminal Appeals held that it was without jurisdiction to entertain Chapman's writ of habeas corpus because his court-martial had "completed direct review under Article 71, UCMJ, and [was] final under Article 76, UCMJ." *Id.* (citing *Gray,* 70 M.J. at 647). The court also relied on the Supreme Court's decision in *Denedo*. In *Denedo*, the Court concluded that military courts have jurisdiction over writs of error c*oram nobis* even after the proceedings are final pursuant to Article 76, UCMJ, because "an application for the writ is properly viewed as a belated extension of the original proceeding during which the error allegedly transpired." 556 U.S. at 912-13. But because a habeas corpus petition is not an extension of the direct appeal, the Air Force court concluded that *Denedo's* rationale does not apply and does not extend habeas jurisdiction beyond the finality of Article 76, UCMJ.

The Army Court of Criminal Appeals reached a similar holding in *Gray*. In *Gray*, the court rejected Gray's petition for habeas relief because his court-martial had completed direct review and there was a final judgment as to the legality of the proceedings under Article 71, UCMJ. Unlike *Loving*, however, the President had approved his death penalty and ordered it executed, so the case was final under Article 76, UCMJ. *Gray*, 70 M.J. at 647. The court went on to explain that it had jurisdiction to hear a *coram nobis* petition, but that Gray did not meet the stringent requirements for such a petition because he had another remedy besides *coram nobis*—habeas relief from the Article III courts. *Id.*

We find *Chapman* and *Gray* compelling, yet in direct conflict with established precedent of this court. In *Fisher v. Commander*, 56 M.J. 691 (N-M. Ct. Crim. App. 2001)—decided before *Loving* and *Denedo*—we held that Article 76, UCMJ, was not a bar to habeas jurisdiction under the All Writs Act. In so holding, we relied on *Dew v. United States*, 48 M.J. 639, 647 (Army Ct. Crim. App. 1998). *Fisher*, 56 M.J. at 693. However, the "expansive approach [to jurisdiction] taken in . . . *Dew*" has been repudiated by the CAAF in *United States v. Arness*, 74 M.J. 441, 443 (C.A.A.F. 2015). Therefore, in light of *Arness*, *Loving*, and *Denedo*, and our sister courts' holdings in *Chapman* and *Gray*, we question the continued viability of our holding in *Fisher*. But, because we conclude that the petitioner's case was not final pursuant to Article 76, UCMJ, it is distinguishable from *Fisher*, *Chapman*, and *Gray*. As a result, we have no occasion to revisit our holding in *Fisher* here, since "it is . . . unnecessary to the resolution of this case," and to do so "would constitute an advisory opinion." *United States v. Hamilton*, 78 M.J. 335, 342 (C.A.A.F. 2019).

*3. "Finality"* under Article 76

Article 76, UCMJ, states, in pertinent part:

> The appellate review of records of trial provided by this chapter, the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter, and all dismissals and discharges *carried into execution* under sentences by courts-martial following approval, review, or affirmation as required by this chapter, *are final and conclusive.*

(Emphasis added). In *Loving*, the CAAF looked to Article 71(a), which requires approval by the President before a capital sentence can be executed, in determining that a "capital case is final with[in] the meaning of Article 76 only after the President, acting under Article 71(a), approves it." 62 M.J. at 240. The court held that "[o]nly after there is 'a final judgment as to the legality of the proceedings' is a sentence ripe for execution—that is ripe for 'approval' under either Article 71(a) (as to a death sentence) or Article 71(b) (as to dismissal or punitive discharge)." *Id.* at 243.

*Loving* dealt with a death sentence, so the Article 71(a), UCMJ, requirement that the President approve a death sentence before it is ripe for execution guided their reasoning. The petitioner here, on the other hand, was not sentenced to death, so we must look elsewhere to determine whether his sentence is final for Article 76, UCMJ, purposes. We need look no further than the plain text of Article 76, which declares final and conclusive only sentences, including discharges, *"carried into execution* under sentences by courts-martial following approval, review, or affirmation" as required by the UCMJ. 10 U.S.C. § 876 (emphasis added).

We now look to the petitioner's sentence. As discussed *supra*, the petitioner was sentenced to 30 years' confinement and a dishonorable discharge. The convening authority ordered the confinement executed, but, consistent with Article 71(c)(1)[3] and R.C.M. 1113(c), did not order the dishonorable discharge executed. The Department of the Navy allows punitive discharges to be executed

---

[3] "If a sentence extends to death, dismissal, or a dishonorable or bad-conduct discharge . . . that part of the sentence extending to death, dismissal, or a dishonorable or bad-conduct discharge may not be executed until there is a final judgment as to the legality of the proceeding . . . ."

only after the completion of both direct appellate review *and* the initial clemency review.[4] The initial clemency review for prisoners with an approved sentence to confinement for 30 years or more occurs only after the prisoner serves at least 10 years of confinement.[5] As the petitioner has not had his initial clemency review, the government concedes that his dishonorable discharge has not yet been executed.[6] Since the dishonorable discharge has not been "executed," the case is not final under Article 76. *See Loving*, 62 M.J. at 244 ("But this case is not final under Article 76 because the President has not ordered the sentence executed."); *Chapman,* 75 M.J. at 602 (case is final under Article 76, UCMJ, when "all portions of the sentence have been ordered executed").

Since petitioner's court-martial is not final under Article 76, we retain jurisdiction to consider his petition for habeas corpus. Accordingly, we turn to the merits of his petition.

## B. Retroactivity of *United States v. Mangahas*

In determining whether petitioner is entitled to relief, we are mindful that issuance of a writ is "a drastic remedy that should be used only in truly extraordinary situations." *Aviz v. Carver*, 36 M.J. 1026, 1028 (N-M. Ct. Crim. App. 1993). The petitioner has the heavy burden of establishing a "clear and indisputable right to the requested relief." *Denedo v. United States*, 66 M.J. 114, 126 (C.A.A.F. 2008) (citing *Cheney v. United States Dist. Court*, 542 U.S. 367, 381 (2004)).

At the time of petitioner's offenses, Article 43 provided:

> (a) A person charged with absence without leave or missing movement in time of war, or with *any offense punishable by death*, may be tried and punished at any time without limitation.

> (b)(1) Except as otherwise provided in this section (article), a person charged with an offense is not liable to be tried by court-martial if the offense was committed more than five years before

---

[4] Sec'y of the Navy, SECNAVINST 5815.3J, Dep't of the Navy Clemency and Parole Systems at ¶ 415 (2003) ("Approved, unsuspended punitive discharges . . . will not be executed until the initial mandatory clemency review . . . has been completed or waived[.]").

[5] *Id.* at ¶ 403(d)(3); Dep't of Defense, DODI 1325.07, Admin. of Military Corr. Facilities and Clemency and Parole Auth., 25-26, 28 (Change 3, 2018). *See also* Government Answer of 1 Apr 19 at 4.

[6] *See* Government Answer of 1 Apr 19 at 4.

> the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command.

10 U.S.C. § 843 (1986) (emphasis added).[7]

In 1997, Article 120, UCMJ, clearly included in its language a maximum punishment of death. 10 U.S.C. § 920 (1997). However, the Supreme Court in *Coker v. Georgia*, 433 U.S. 584 (1977), had already held that the death sentence was an unconstitutional punishment for the offense of rape.[8] *Id.* at 592. Despite this Supreme Court precedent, the CAAF had interpreted Article 43 to exempt rape from the five-year statute of limitations because, under the UCMJ, rape was an "offense punishable by death." *See Willenbring v. Neurauter*, 48 M.J. 152, 178, 180 (C.A.A.F. 1998). In *Mangahas*, on an interlocutory appeal, the CAAF specified the following issue:

> In light of *Coker v. Georgia*, and *United States v. Hickson*, 22 M.J. 146, 154 n.10 (C.M.A. 1986), was the offense of rape of an adult woman, a violation of Article 120 UCMJ, 10 U.S.C. § 920 (Supp. II 1997), a crime punishable by death within the meaning of Article 43, UCMJ, 10 U.S.C. § 843 (1994).

---

[7] In 2006, Congress amended Article 43(a). At the time of petitioner's court-martial, Article 43(a) provided:

> (a) A person charged with absence without leave or missing movement in time of war, with murder, rape, or rape of a child, or with any other offense punishable by death, may be tried and punished at any time without limitation.

[8] *Kennedy v. Louisiana*, 554 U.S. 407 (2008), likewise invalidated the death penalty as a permissible punishment for the crime of rape of a child. *Kennedy* had not been decided at the time of the offenses alleged in Charge I, Specification 1. *Coker* only found that the death penalty for rape of an *adult woman* was unconstitutional. *Coker*, 433 U.S. at 597. As a result, no precedent from the Supreme Court or from CAAF proscribed the death penalty for rape of a child at the time the petitioner first raped LN. Arguably, therefore, the CAAF's holding in *Mangahas*—that the five-year statute of limitations in Article 43, UCMJ, applied because the Supreme Court's holding in *Coker* came "decades prior" to Mangahas' alleged crime—does not necessarily apply to the petitioner's misconduct in Specification 1. *Mangahas*, 77 M.J. at 223. We need not decide today, however, the full extent of the CAAF's holding in *Mangahas* and whether it applies to crimes such as the petitioner's. We reach this conclusion, because even assuming CAAF's holding in *Mangahas* applies to Specification 1, we conclude it does not apply retroactively.

77 M.J. at 222 (internal citation omitted). The court answered the specified issue in the negative, expressly overruling *Willenbring* and dismissing as time-barred the rape charge brought against the appellant in *Mangahas* eighteen years after the alleged incident. *Id*.

The petitioner now seeks to have this court apply *Mangahas* retroactively to bar prosecution for his offenses, arguing that in deciding *Mangahas*, the CAAF created a new substantive rule of constitutional law that applies retroactively. *See Montgomery v. Louisiana*, 136 S. Ct. 718, 728 (2016) ("[C]ourts must give retroactive effect to new substantive rules of constitutional law."); *Teague v. Lane*, 489 U.S. 288 (1989) (establishing the framework for determining whether a new rule has retroactive application). Because he was charged in 2015 for offenses that occurred between 1999 and 2007, applying *Mangahas* retroactively would place his conduct outside the default five-year statute of limitations at the time he was charged.

We find, consistent with the United States District Court for the District of Kansas,[9] that CAAF's holding in *Mangahas* creates a new rule of *procedure*, rather than a substantive rule of constitutional law, and it therefore does not apply retroactively to provide petitioner relief. When a decision results in a new rule, "that rule applies to all criminal cases still pending on direct review," but "[a]s to convictions that are already final . . . the rule applies only in limited circumstances." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). As we noted above, because there has been a final judgment as to the legality of the proceedings under Article 71, UCMJ, the petitioner's case has completed direct review. In *Teague*, the Supreme Court established a roadmap for analyzing retroactive application of new rules. The Court noted two exceptions to this general bar on retroactivity. 489 U.S. at 311-12. In *Schriro,* the Supreme Court succinctly explained the *Teague* analysis as follows:

> New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish. Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.

---

[9] *See Nixon v. Hilton*, No. 18-3139-JWL, 2018 U.S. Dist. LEXIS 183106 (D. Kan. Oct. 25, 2018) (unpub. op.).

New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. That a new procedural rule is fundamental in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is *seriously* diminished. This class of rules is extremely narrow, and it is unlikely that any . . . ha[s] yet to emerge.

*Schriro*, 542 U.S. at 351-52 (alterations and emphasis in original) (citations and internal quotation marks omitted). The determination of retroactive application depends largely "on whether the new rule itself has a procedural function or a substantive function—that is, whether it alters only the procedures used to obtain the conviction, or alters instead the range of conduct or class of persons that the law punishes." *Welch v. United States*, 136 S. Ct. 1257, 1266 (2016). "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. In contrast, rules that regulate only the *manner of determining* the [Petitioner's] culpability are procedural." *Schriro,* 542 U.S. at 353 (emphasis in original) (internal citations omitted).

The petitioner attempts to force the *Mangahas* rule into the first *Teague* exception, the "substantive law" category, citing three flawed rationales: (1) that *Mangahas* sets forth a new rule of constitutional law; (2) it affects the reach of Article 120 via the interpretation of Article 43, UCMJ; and (3) that it directly alters the "range of conduct," as well as the "class of persons," subject to punishment for sexual offenses under the UCMJ. However, the rule in *Mangahas*—that because rape was not punishable by death, it was not exempt from the statute of limitations set forth in Article 43, UCMJ—only alters the procedures by which one can be charged—specifically, the time limit before which one must be charged—not the underlying conduct. *See generally Nixon v. Hilton*, No. 18-3139-JWL, 2018 U.S. Dist. LEXIS 183106, at \*11-12 (D. Kan. Oct. 25, 2018) (unpub. op.) (analyzing a petition for habeas corpus seeking to apply *Mangahas* retroactively and holding that "the new rule in *Mangahas* does not fit within either of the non-retroactivity exceptions set forth in *Teague*"); *Hill v. Rivera*, No. 2:17CV00003-JLH, 2018 U.S. Dist. LEXIS 200223, at \*8 (E.D. Ark. Nov. 27, 2018) (unpub. op.) ("The *Mangahas* rule is not substantive.").

Nothing in *Mangahas* alters the criminality of the petitioner's underlying conduct; he remains guilty of the acts of rape and rape of a child and merely seeks relief citing the now-invalidated procedure by which he was convicted.

The second exception created by *Teague* is for "watershed rules of criminal procedure," without which the accuracy and "fundamental fairness" of the criminal proceeding are questionable. *Teague*, 489 U.S. at 311-15. "In order to qualify as watershed, a new rule must meet two requirements. First, the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction. Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (citations and internal quotation marks omitted). This exception is "extremely narrow," and "it is unlikely that any such rules ha[ve] yet to emerge." *Id.* at 417 (alteration in original) (citation and internal quotation marks omitted). Indeed, since *Teague*, the Supreme Court "ha[s] rejected every claim that a new rule satisfied the requirements for watershed status." *Id.* at 418. *See Hill v. Rivera*, 2018 U.S. Dist. LEXIS 200223, at *10 ("The [*Mangahas*] rule here is not a watershed procedural rule that applies retroactively."). We, likewise, reject the petitioner's claim that *Mangahas* announced a "watershed rule."

Because we find that *Mangahas* does not have retroactive application, we conclude that the petitioner has failed to establish a "clear and indisputable right to the requested relief." *Cheney*, 542 U.S. at 381.

### III. CONCLUSION

The Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus is **DENIED**.

Senior Judge TANG and Judge LAWRENCE concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

11