Anthony L. FISHER, Jr., Petitioner,

v.

COMMANDER, ARMY REGIONAL
CONFINEMENT FACILITY,

and

United States, Respondents.

NMCM 9200034.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 9 Aug. 1991.

Decided 17 Dec. 2001.

Phillip D. Cave, Civilian Defense Counsel.

CDR Peter A. Dutton, JAGC, USN, Appellate Government Counsel.

LT Deborah Mayer, JAGC, USNR, Appellate Government Counsel.

Before LEO, BRYANT, and FINNIE, Appellate Military Judges.

LEO, Chief Judge:

On 9 August 1991, the petitioner was convicted *in absentia* before a general court-martial composed of officer members of desertion, rape, and assault consummated by a battery, in violation of Articles 85, 120, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 885, 920, and 928. He was sentenced to confinement for seven years, forfeiture of $753.00 pay per month for a period of seven years, reduction to the pay grade E–1, and a dishonorable discharge. On 23 December 1991, the convening authority approved the sentence as adjudged.

In conducting our Article 66(c), UCMJ, 10 U.S.C. § 866(c), review, we affirmed the findings and sentence. *United States v. Fisher,* No. 920034 (N.M.C.M.R. 30 Nov 1992)(unpublished op.). The petitioner then filed a petition for grant of review with the Court of

Military Appeals. *United States v. Fisher,* 37 M.J. 239 (C.M.A.1993). His petition was denied. *United States v. Fisher,* 38 M.J. 222 (C.M.A.1993). On 17 July 2001, the petitioner filed with this Court a petition for extraordinary relief in the nature of a writ of *habeas corpus,* error *coram nobis,* and *mandamus.*

 The issuance of a writ is "a drastic remedy that should be used only in truly extraordinary situations." *Aviz v. Carver,* 36 M.J. 1026, 1028 (N.M.C.M.R.1993)(citing *United States v. Labella,* 15 M.J. 228 (C.M.A. 1983)). The petitioner has the heavy burden of showing that he has "a clear and indisputable right" to the extraordinary relief that he has requested. *Aviz,* 36 M.J. at 1028. After reviewing the petition, the briefs of the parties, and the appendices to the briefs, we conclude the petitioner is not entitled to the relief he requests. Accordingly, the petition is denied.

## I. Background

On 13 June 1991, the petitioner was arraigned on the above charges. On 17 July 1991, he absented himself without authority and was subsequently tried and convicted *in absentia.* According to the petitioner, he was shot and wounded in an armed robbery during his unauthorized absence. While hospitalized, he was taken into custody by local law enforcement officials. On 25 August 1991, he was released to military authorities to begin serving his court-martial sentence. However, on 30 August 1991, he was delivered to the State of California to face trial on a felony complaint of armed robbery. The petitioner was convicted and sentenced on 6 February 1992 to 16 years in state prison. Upon completion of his civilian sentence on or about 5 November 1999, he was returned by the State of California to military control to serve out the remainder of his court-martial sentence at the Army Regional Confinement Facility, Fort Lewis, Washington.

## II. Jurisdiction

 The Government argues that we have no jurisdiction to consider this petition. We disagree.

Under the All Writs Act, [28 U.S.C. § 1651(a),] "all courts established by Act of

Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." We are a court that Congress, acting through the Judge Advocate General, has created. [*Dettinger v. United States*, 7 M.J. 216, 219 (C.M.A. 1979)]; *see also* [*United States v. Frischholz*, 16 C.M.A. 150, 151, 36 C.M.R. 306, 307, 1966 WL 4467 (C.M.A.1966)](All Writs Act applicable not only to Article III courts, but to all courts established by Congress). Accordingly, this court is empowered under the All Writs Act to grant extraordinary relief where appropriate. *Id.; Aviz v. Carver,* 36 M.J. 1026, 1028 (N.M.C.M.R.1993).

*Ponder v. Stone,* 54 M.J. 613, 615 (N.M.Ct. Crim.App.2000). As explained in *Ponder,* we reject as overbroad the Government's interpretation of *Clinton v. Goldsmith,* 526 U.S. 529, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999), as a severe limitation on our consideration of writ petitions. *Id.* As for the Government's argument that we have no jurisdiction because the petitioner's court-martial is final and conclusive under Article 76, UCMJ, 10 U.S.C. § 876, we hold that this article is not a bar to our consideration of his petition. A request for extraordinary relief in the nature of a writ of *habeas corpus* or error *coram nobis* may be filed with a military appellate court to collaterally attack a completed court-martial proceeding. *Dew v. United States,* 48 M.J. 639, 647 (Army Ct.Crim.App.1998). We view our consideration of this petition as properly a matter in aid of our jurisdiction under the All Writs Act.

### III. Writ of Habeas Corpus

█ A writ of *habeas corpus* orders the release of a petitioner because his confinement in some way is improper or illegal. *See Moore v. Akins,* 30 M.J. 249 (C.M.A.1990); *Gragg v. United States,* 10 M.J. 286 (C.M.A.1981)(summary disposition); *Frage v. Edington,* 26 M.J. 927 (N.M.C.M.R.1988); *McCray v. Grande,* 38 M.J. 657 (A.C.M.R. 1993). The petitioner in this case seeks the

issuance of a writ of *habeas corpus* on the grounds that he is being unlawfully held beyond the completion of his adjudged court-martial confinement. He argues that this confinement was served concurrently with his civilian prison sentence because he was delivered to the State of California on 30 August 1991 under Article V(f) of the Interstate Agreement on Detainers Act, 18 U.S.C. Appendix (IADA). Petitioner's Brief of 17 Jul 2001 at 10–12. Therefore, according to the petitioner, he had served all of his court-martial confinement by the time he returned to military control on 5 November 1999. He also argues that military jurisdiction over him ended when he was issued his dishonorable discharge certificate (DD Form 214) while serving his civilian prison sentence. As a result, he claims the military had no authority to reconfine him after his release from state prison. *Id.* at 12–15. We disagree with both arguments.

### A. Original Delivery to State

█ We find that the petitioner's delivery to state authorities to stand trial was accomplished under Article 14, UCMJ, 10 U.S.C. § 814. The transfer of a military prisoner pursuant to this article merely interrupts the execution of his court-martial sentence. *United States v. Bramer,* 45 M.J. 296, 299 (1996); Art. 14(b), UCMJ. Upon request by military authorities after completion of any civilian confinement, the prisoner must be returned to military control to serve out the rest of his court-martial sentence. Art. 14(b), UCMJ.

█ The regulations governing the delivery of a military prisoner to civilian authorities are found in the Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7C §§ 607 and 613 (3 Oct 1990)(JAGMAN). According to JAGMAN § 613(a), the legal authority for delivery of military prisoners to state officials is grounded in Article 14, UCMJ and, "[a]lthough seldom utilized," the IADA.[1] Under the IADA, a

---

1. "The Interstate Agreement on Detainers (Agreement) is a compact" entered into by "48 States, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States." *Carch-* *man v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). The Agreement applies to the military. *United States v. Greer,* 21 M.J. 338, 340 (C.M.A.1986); JAGMAN § 613(a). Its

court-martial confinement continues to run while the military prisoner is temporarily in state custody. JAGMAN § 0613(b). The regulations further state, "When a request for custody does not invoke the [IADA], delivery of custody *shall* be governed by Article 14, UCMJ, and sections 0603 through 0610, of this Manual." JAGMAN § 613(c)(emphasis added). Thus, the fact that the IADA must be invoked clearly implies that the military article is the instrument of choice for delivery of a military prisoner to state authorities.[2] To effect delivery, a written agreement conforming to the sample form in JAGMAN Appendix A–6–b must be executed by an authorized representative of the state seeking temporary custody of the prisoner. JAGMAN § 607.

It is clear to us that the State of California did not assert the IADA at the time it requested delivery of the petitioner into its custody. The written agreement that it used was obviously patterned after the sample form in JAGMAN Appendix A–6–b, as required by JAGMAN §§ 607 and 613 for delivery under Article 14, UCMJ. Also, the District Attorney's office had no official documents showing that the IADA was asserted to obtain delivery of the petitioner. Respondent's Answer of 3 Aug 01, Appendix (Declaration under penalty of perjury by Scott G. Carbaugh of 31 Jul 2001). Finally, the various letters and memorandums from the Department of the Navy that the petitioner identified as using the term "detainer" could not have effected a transfer under the IADA, the purpose of which is to obtain the temporary delivery of a prisoner by the sending state to the receiving state for disposition of outstanding charges. To obtain custody of a military prisoner, such a transfer occurs only "[u]pon *request under the Act* by either *State authorities or the prisoner.*" JAGMAN § 613(b)(emphasis added). We have no evidence of a request under the IADA by either one.

**B. Issuance of Form DD–214.**

■ The petitioner next argues that, even if he was delivered to the State of California under Article 14, UCMJ, the issuance of a military discharge certificate (Form DD–214) while he was still in civilian custody vitiated the article, thereby terminating military jurisdiction over him.

The cases cited by the petitioner in support of his argument are inapposite. They address the issue of jurisdiction in the context of an accused awaiting trial on pending charges before a court-martial. In this case, jurisdiction over the petitioner had already attached before issuance of his dishonorable discharge certificate; it continues through sentence and punishment. RULE FOR COURTS-MARTIAL 202(c)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). *See also Coleman v. Tennessee,* 97 U.S. 509, 24 L.Ed. 1118 (1878)(holding that principle of continuing jurisdiction permitted execution of military sentence, despite lapse of many years and appellant's severance of all connection with the military). The issuance of the discharge certificate merely executed that part of the petitioner's sentence extending to the dishonorable discharge. It terminated his status as an active duty service member, but not his status as a "military prisoner." *Carter v. McClaughry,* 183 U.S. 365, 383, 22 S.Ct. 181, 46 L.Ed. 236 (1902). While confined, a military prisoner remains subject to the UCMJ even after he is discharged from military service. *Id.; United States v. Hudson,* 5 M.J. 413, 421 n. 4 (C.M.A.1978); *United States v. Harry,* 25 M.J. 513, 513 (A.F.C.M.R.1987); Art. 2(a)(7), UCMJ, 10 U.S.C. § 802(a)(7).

Because the written agreement effecting his transfer to state authorities *required* that the petitioner be returned after completing his civilian confinement when requested by military authorities, we believe he effectively remained a prisoner subject to military con-

---

purpose is "to encourage the expeditious and orderly disposition" of outstanding charges by party States against "persons already incarcerated in other jurisdictions." IADA, Article I.

**2.** According to our superior Court, "Congress has exercised its control over military discipline through the Uniform Code of Military Justice."

*United States v. McElhaney,* 54 M.J. 120, 124 (2000). Therefore, as a matter of policy, caution must be exercised "in overlaying a generally applicable statute specifically onto the military system." *Id.* (quoting *United States v. Dowty,* 48 M.J. 102, 111 (1998)).

trol. Art. 14(b), UCMJ. In other words, delivery of *temporary* custody to state authorities did not relinquish military control over him, nor did it change his status as a military prisoner. We, therefore, reject the petitioner's argument that the principle of continuing jurisdiction is limited to persons "physically in military control." Petitioner's Brief of 17 Jul 2001 at 14.

### IV. Writ of Error *Coram Nobis*

■ The Court of Appeals for the Armed Forces has summarized the nature of the writ of error *coram nobis* as follows:

> *Coram nobis* is not a substitute for an appeal. It is extraordinary relief predicated upon "exceptional circumstances" not apparent to the court in its original consideration of the case. It may not be used to seek a reevaluation of the evidence or a reconsideration of alleged errors.

*Frischholz*, 16 C.M.A. at 153, 36 C.M.R. at 309 (citations omitted). A court may correct its earlier disposition of a case because it "misperceived or improperly assessed a material fact." *McPhail v. United States*, 1 M.J. 457, 459 (C.M.A.1976). However, a petitioner must first show that there was an error not known to him at trial or on appeal and that it was "of such a fundamental nature as to render the proceeding itself irregular and invalid." *Chapel v. United States*, 21 M.J. 687, 689 (A.C.M.R.1985)(citing *United States v. Morgan*, 346 U.S. 502, 505–13, 74 S.Ct. 247, 98 L.Ed. 248 (1954)).

■ The petitioner now seeks the issuance of a writ of error *coram nobis* on the grounds that he was denied effective assistance of appellate counsel during our initial review of his case. He alleges that his appellate counsel was ineffective because his counsel never contacted him. Applying the standard established in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) to this case, we can test such a claim for prejudice. *United States v. Curtis*, 44 M.J. 106, 164 (1996); *cf. United States v. Howard*, 47 M.J. 104 (1997)(holding that failure of substitute defense counsel to establish attorney-client relationship with ac-

cused before responding to staff judge advocate's recommendation must be tested for prejudice to obtain relief). The appellant argues that he was prejudiced because he was denied the opportunity to address during the normal course of appellate review the issue now raised in this petition. We reviewed the issue concerning his continued confinement and found it to be without merit. We, therefore, hold that the petitioner was not prejudiced by the performance of his appellate counsel,[3] and the alleged failure of his counsel to contact him was not so fundamental as to render the appellate proceedings irregular and invalid.

### V. Disposition

We also considered the petitioner's request for a writ of *mandamus* and found insufficient grounds to issue such a writ. Accordingly, the petition for extraordinary relief in the nature of a writ of *habeas corpus*, error *coram nobis*, and *mandamus* is denied.

Judge FINNIE and Judge BRYANT concur.

---

**3.** In fact, the petitioner's appellate counsel attacked the findings of the court-martial by raising five other assignments of error for consideration by this Court in its Article 66(c), UCMJ, review.