*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
THE COURT EN BANC

_____

**In Re Decker B. JORDAN**
Petitioner

**UNITED STATES**
Respondent

**No. 201100621**

Decided: 27 August 2020

Review of Pro Se Petition for Extraordinary Relief
in the Nature of a Writ of Habeas Corpus

Military Judge:
Michael Mori

Sentence adjudged 4 August 2011 by a general court-martial convened at Navy Region Hawaii, Pearl Harbor, Hawaii, consisting of officer and enlisted members. Sentence approved by the convening authority: reduction to E-1, confinement for 29 years and 6 months, total forfeiture of pay and allowances, and a dishonorable discharge.

Judge LAWRENCE delivered the opinion of the Court, in which Chief Judge MONAHAN, Chief Judge Emeritus CRISFIELD, Senior Judges KING, GASTON, and STEPHENS, and Judges STEWART and HOUTZ concur.

_____

**PUBLISHED OPINION OF THE COURT**

_____

LAWRENCE, Judge:

Petitioner, a former Service Member confined at Federal Correctional Institution [FCI] Petersburg, Virginia, Medium Security, filing pro se, seeks extraordinary relief in the nature of a writ of habeas corpus under the All Writs Act.[1] In July 2019, Petitioner filed with the Court of Appeals for the Armed Forces [CAAF] what it interpreted as a petition for extraordinary relief, which the CAAF dismissed for lack of jurisdiction.[2] In July 2020, Petitioner filed another petition for extraordinary relief, which the CAAF again dismissed for lack of jurisdiction.[3]

Petitioner claims he is innocent of all charged offenses due to what he asserts was perjured trial testimony of his then-minor daughter, "Tina,"[4] the victim of his sexual offenses. To that end, he prays for a *Dubay*[5] hearing and vacation of his convictions.

We find that because Petitioner's case is final and he remains in confinement, we are without jurisdiction to consider his petition as submitted. Our holding today overturns the prior precedent of this Court insofar as it states that Article 76, Uniform Code of Military Justice (2018)[6] [UCMJ[7]], does not limit our jurisdiction. We further conclude that even if construed as a petition for a writ of error *coram nobis*, Petitioner's claim does not merit relief.

---

[1] 28 U.S.C. § 1651(a) (2018).

[2] *See Jordan v. United States*, 79 M.J. 215 (C.A.A.F. 2019) (mem.).

[3] *See In Re Jordan*, __ M.J. __, No. 20-0321/NA, 2020 CAAF LEXIS 422 (C.A.A.F. July 29, 2020) (mem.).

[4] This is a pseudonym.

[5] *United States v. Dubay*, 37 C.M.R. 411 (C.M.A. 1967).

[6] Article 76 has never been amended since the Uniform Code of Military Justice was first enacted in 1956. Thus, the version in effect at the time of Petitioner's direct appeal, found in the 2012 edition of the U.S. Code, is identical to both the current version and 2000 version in effect when this Court issued the opinion we now overrule, *Fisher v. Commander*, 56 M.J. 691 (N-M. Ct. Crim. App. 2001).

[7] All references to the UCMJ in this opinion are to the current (2018) version unless otherwise noted. In many instances, the references are to prior litigation or other cases in which the UCMJ reference is to an earlier edition of the U.S. Code. However, unless the earlier edition contained a version of the UCMJ different from the 2018 version, we do not specifically note the earlier edition.

## I. BACKGROUND

Petitioner was charged with, *inter alia*, rape and sexual abuse of his daughter, Tina, when she was between 6 and 10 years old. As this Court noted in its earlier opinion, Petitioner sexually abused Tina in two different homes that included "rubbing his penis on Tina's vagina while lying behind her, touching Tina's genitalia and buttocks with his hand, and having Tina touch his penis with her hand."[8] The abuse was reported when Tina let her mother know through a note that she and her father had engaged in sex.

A panel of officer and enlisted members convicted Petitioner, contrary to his pleas, of two specifications of rape of a child under the age of 12, one specification of aggravated sexual contact of a child under the age of 12, and three specifications of aggravated sexual abuse of a child under the age of 12, all in violation of Article 120, UCMJ (2000 & Supp. V 2006);[9] and three specifications of indecent acts with a child in violation of Article 134, UCMJ (2000).[10]

On direct appeal, this Court considered the assignments of error raised by Petitioner and conducted our own review under Articles 59 and 66, UCMJ (2012). We set aside and dismissed as multiplicious one specification and otherwise affirmed the findings and sentence.[11] The Naval Clemency and Parole Board conducted initial mandatory clemency review and denied relief on 25 July 2012. Petitioner sought review by the CAAF, but was denied, as was his subsequent petition for reconsideration. By General Court-Martial

---

[8] *United States v. Jordan*, 2012 CCA LEXIS 454, *4 (N-M. Ct. Crim. App. 2012) (unpub. op.). We note that the LEXIS reporter has mislabeled this Court's earlier decision as "*United States v. Decker*," mistakenly transposing Petitioner's first and last name. We will use the corrected information throughout this opinion.

[9] One specification of rape invoked the 2000 statute as it occurred before 1 October 2007. The remaining specifications all occurred after 1 October 2007 and were charged under the 2006 statute.

[10] As no terminal element was charged, in accordance with *United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011), the military judge dismissed this charge and the underlying specifications after the members announced sentence. To account for this, he recommended a 6-month reduction in the confinement portion of the members' 30-year adjudged sentence. The convening authority noted this recommendation as the basis for approving a sentence including confinement for 29 years and 6 months.

[11] *See United States v. Jordan*, 2012 CCA LEXIS 454 (dismissing one specification of aggravated sexual abuse of a child that was based upon the same conduct as one of the rape of a child offenses).

Supplemental Order No. LTP13-0295 of 9 October 2013, his dishonorable discharge was ordered executed. He then petitioned the Judge Advocate General of the Navy for a new trial pursuant to Article 73, UCMJ (2012). When that request was denied, his case was finish-filed on 16 September 2014.

## II. DISCUSSION

### A. Jurisdiction

As an Article I Court with limited statutory powers as defined by Congress, before entertaining Petitioner's claim, we must first be satisfied of our jurisdiction.[12] Pursuant to Article 66(b), UCMJ, by virtue of Petitioner's approved sentence including a dishonorable discharge and 29 years, 6 months' confinement, this Court had jurisdiction when it previously considered his direct appeal. While not serving as "an independent grant of jurisdiction, nor expand[ing] [our] existing statutory jurisdiction,"[13] the All Writs Act allows us to grant Petitioner's prayer for relief only if we determine: "(1) that the requested writ is in aid of [our] existing jurisdiction; and (2) the requested writ is necessary or appropriate."[14]

#### 1. Statutory limits on jurisdiction of military appellate courts

Certain executive action must occur prior to execution of a sentence of death, dismissal, or dishonorable or bad-conduct discharge.[15] A death penalty

---

[12] *See Loving v. United States*, 62 M.J. 235, 239 (C.A.A.F. 2005) ("we may not act unless Congress has given us the authority to do so."); *see also United States v. Arness*, 74 M.J. 441, 442 (C.A.A.F. 2015) ("The courts of criminal appeals are courts of limited jurisdiction, defined entirely by statute.").

[13] *LRM v. Kastenberg*, 72 M.J. 364, 367 (C.A.A.F. 2013) (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534-5 (1999)).

[14] *Id.* at 367-68 (quoting *Denedo v. United States*, 66 M.J. 114, 119 (C.A.A.F. 2008)) (internal quotation marks omitted).

[15] While all actions were taken to finality in both the appellate review and execution of Petitioner's dishonorable discharge, this was done pursuant to Article 71, UCMJ (2012), which has been replaced by Article 57, UCMJ (2018). We note that the same requirements and nearly identical language is found in this renumbered section. *Compare* the 2018 version of Article 57(a)(3), (4), and (5) with the 2012 version of Article 71(a), (b), and (c). We continue to reference the 2012 version of Article 71 as it applied throughout the stages of Petitioner's case and in cited opinions, but our holding today applies equally to Article 57 (2018).

sentence must be acted upon by the President.[16] A dismissal or other punitive discharge is reserved for Secretarial action.[17] Absent waiver or withdrawal of appeal, this portion of the sentence may not be executed prior to "a final judgment as to the legality of the proceedings,"[18] meaning completion of direct legal review by the respective court of criminal appeals under Article 66, UCMJ, and any subsequent review that may be undertaken by the CAAF pursuant to Article 67, UCMJ, and the Supreme Court by writ of certiorari.

Congress designed the statute to ensure that appellate review of courts-martial as affirmed, and dismissals and discharges as executed, are "final and conclusive[,] . . . subject only to" three limited exceptions: (1) a petition for a new trial under Article 73, UCMJ; (2) Service Secretary action to remit or suspend a sentence under Article 74, UCMJ; and (3) Presidential action.[19]

In this context, the Supreme Court implores us to grant extraordinary writ relief in only "extreme cases," as "judgment finality is not to be lightly cast aside."[20] We will deny a petition unless a petitioner establishes his "clear and indisputable right to the requested relief."[21]

### 2. Application of Article 76, UCMJ, finality to extraordinary writ petitions

In our 2019 published opinion, *In Re Best*,[22] this Court questioned the continued validity of our decision in *Fisher v. Commander,*[23] where we held that, despite completion of appellate review and execution of a petitioner's dishonorable discharge, Article 76, UCMJ, "is not a bar to our consideration

---

[16] *See* UCMJ art. 71(a) (2012).

[17] *See* UCMJ art. 71(b) (2012).

[18] UCMJ art. 71(c)(1) (2012).

[19] *See* UCMJ art. 76.

[20] *Denedo*, 556 U.S. at 916.

[21] *Denedo*, 66 M.J. at 126 (citing *Cheney v. United States Dist. Court*, 542 U.S. 367, 381 (2004)).

[22] 79 M.J. 594 (N-M. Ct. Crim. App. 2019).

[23] *Fisher v. Commander*, 56 M.J. 691 (N-M. Ct. Crim. App. 2001). Fisher sought extraordinary relief, contesting his return to military control to serve the remainder of his sentence to include seven years' confinement for desertion, rape, and assault consummated by a battery. This followed satisfaction of his state sentence of nearly 8 of 16 years for a separate armed robbery he committed after absenting himself, post-arraignment, from his court-martial.

of his [writ of habeas corpus] petition."[24] Ultimately, in *Best*, we distinguished *Fisher* since Best's punitive discharge had not yet been executed, and thus his case was not final under Article 76.[25] Here, by contrast, Petitioner's dishonorable discharge has been executed and the appellate courts have rendered a final judgment as to the legality of the proceedings, satisfying Article 71(b) and (c)(1), UCMJ, and rendering his case final under Article 76, UCMJ. Hence, absent any distinguishing facts in the present petition, we must directly address *Fisher*.

We start by considering those cases which have observed the central role that finality of a court-martial under Article 76, UCMJ, plays in the ability of military appellate courts to entertain prayers for relief pursuant to the All Writs Act. In the wake of the Supreme Court's decision in *United States v. Denedo*, and the CAAF's decision in *United States v. Loving*, we are the only service appellate court whose precedent still maintains a claim of jurisdiction to entertain a writ of habeas corpus after Article 76, UCMJ, has been satisfied.[26]

Our superior court in *Loving* was presented with a petition for extraordinary relief in a capital case. There, final judgment concerning the legality of the proceedings had been rendered by the appellate courts, so the sentence was "ripe for approval" by the executive.[27] But there was no finality on the matter as a whole because the President had not acted on the death sentence.[28]

---

[24] *Id*. at 693.

[25] *See In re Best*, 79 M.J. at 598.

[26] *See Chapman v. United States*, 75 M.J. 598 (A.F. Ct. Crim. App. 2016) and *Gray v. Belcher*, 70 M.J. 646, 647 (A. Ct. Crim. App. 2012). While the Coast Guard Court of Criminal Appeals has yet to specifically address this issue in light of *Denedo* in both the CAAF and Supreme Court and our sister service courts of criminal appeal, it previously held that "Since the findings of guilty have become final by operation of law after being affirmed by this Court and the U.S. Court of Military Appeals [and the appellant's discharge had been executed], consideration [of his claims] is outside the purview of this Court." *United States v. Claxton*, 34 M.J. 1112, 1113 (C.G.C.M.R. 1992).

[27] *Loving*, 62 M.J. at 243.

[28] Ultimately, over 20 years passed since satisfaction of Article 71(c)(1), UCMJ, before, on 17 January 2017, President Obama acted under Article II, Section 2, Clause I of the Constitution and Article 71(a), UCMJ, commuting Loving's sentence to life without the possibility of parole. His commutation was made expressly on the

The court looked to the plain meaning of "final" in Article 76, UCMJ, by examining the President's role in approving the death sentence under Article 71(a), UCMJ (2000). The court found it "clear from the plain words of Articles 71(a) and 76 that the President must 'approve' a sentence of death before a capital case is final within the meaning of Article 76. Furthermore, this reading of the plain text is supported by the legislative history of Article 76."[29] Thus, the CAAF determined that in this intermediary stage where one required step—executive action—was incomplete, "jurisdiction [of the military courts of appeal] continues *until a case is final*."[30]

The Army Court of Criminal Appeals [ACCA] also addressed a death penalty habeas petition in *Gray v. Belcher*, but distinguished it from *Loving* because the President had already approved the petitioner's sentence. Combined with an affirmed conviction and sentence, all proceedings were thus complete and the case was final under Article 76, UCMJ. As such, the ACCA concluded it was "without jurisdiction to entertain collateral review under a writ of habeas corpus."[31] While finality barred the ACCA's consideration of a habeas corpus claim, Gray was not without recourse. His continuing confinement afforded him the grounds to pursue the same writ through the Article III courts.

In *Chapman v. United States*, after final judgment, the petitioner filed a petition for a writ of habeas corpus with the Air Force Court of Criminal Appeals [AFCCA] concerning the legality of the proceedings and execution of

---

condition that Loving "shall never have any rights, privileges, claims, or benefits arising under the parole and suspension or remission of sentence laws of the United States and the regulations promulgated thereunder governing Federal prisoners confined in any penal institution (including, but not limited to, 10 U.S.C. 871, 874, 952), or any acts amendatory or supplementary thereof."

[29] *Loving*, 62 M.J. at 241 ("At the time of enactment of the UCMJ, both Armed Services Committees said of Article 76: 'This article is derived from AW [Article of War] 50(h) and is modified to conform to terminology used in this code. Subject only to a petition for a writ of habeas corpus *in Federal court*, it provides for the finality of court-martial proceedings and judgments.'") (quoting H.R. Rep. No. 81-491, at 35 (1949); S. Rep. No. 81-486, at 32 (1949) reprinted in 1980 U.S.C.C.A.N. 2222, 2258) (alteration in original) (emphasis added).

[30] *Loving*, 62 M.J. at 240 (emphasis added).

[31] *Gray*, 70 M.J. at 647 (internal citation omitted) (quoting H.R. Rep. No. 81-491, at 35 (1949) "Subject only to a petition for a writ of habeas corpus in Federal court, [Article 76, UCMJ] provides for the finality of court-martial proceedings and judgments.").

his dishonorable discharge. Our sister court held that—due to the satisfaction of Articles 71(b) (2012), 71(c)(1) (2012), and 76, UCMJ—it was without jurisdiction to consider the writ. In doing so, the court noted that its holding was aligned with the view that military courts' jurisdiction was limited by Article 76, UCMJ, a view shared by the Supreme Court in *Denedo*, the ACCA in *Gray*, and by implication, the CAAF in *Loving*.[32] Further, the AFCCA seized upon Supreme Court precedent distinguishing between a prayer for *coram nobis* relief as a "belated extension of the original proceeding"[33] and a habeas corpus petition that is distinct from the court-martial.[34] When a case is final under Article 76, UCMJ, the former can be considered by military courts of criminal appeals, but the latter is only appropriate for consideration by Article III courts.[35]

We also note the CAAF recently summarily disposed of a prayer for relief by a former Service Member prisoner at the United States Disciplinary Barracks whose direct appellate review was complete upon the denial of certiorari, whose dismissal had been executed, and whose case was thus final under Article 76, UCMJ. The CAAF considered and denied the petition for a writ of error *coram nobis*, but dismissed the petition for a writ of habeas corpus for lack of jurisdiction.[36]

---

[32] *See Chapman*, 75 M.J. at 600-601 (citing *United States v. Denedo*, 556 U.S. at 920 n.1 in which Chief Roberts in his dissent noted that while Article 76, UCMJ, limits jurisdiction of military courts, that same statute "does not expressly effect any change in the subject-matter jurisdiction of Art. III courts." *Schlesinger v. Councilman*, 420 U.S. 738, 749 (1975)). *See also id.* at 600 ("Implicit in this conclusion [of the CAAF in *Loving* to emphasize its ability to consider the writ of habeas corpus because the case was not yet final] was that if the proceedings were final under Article 76, UCMJ, the military courts would not have jurisdiction.").

[33] *Denedo*, 556 U.S. at 913.

[34] *See Chapman*, 75 M.J. at 601 (citing *United States v. Morgan*, 346 U.S. 502, 505, n.4. (1954)).

[35] *See id.* (quoting *Burns v. Wilson*, 346 U.S. 137, 139 (1953), "The federal civil courts have jurisdiction over [habeas corpus petitions from those confined by court-martial sentence] . . . . By statute, Congress has charged them with the exercise of that power.").

[36] *See Richards v. Barrett,* No. 20-0212, 2020 CAAF LEXIS 262 (C.A.A.F. May 6, 2020) (mem.).

*3. As* Fisher v. Commander *is built upon "repudiated" and overruled decisions, and fails to note the significance of Article 71 (now Article 57), UCMJ, as affecting Article 76, UCMJ, finality, it is overruled*

In *Fisher*, this Court made an overly broad and sweeping pronouncement as a result of failing to apply case finality under Article 76, UCMJ, to both writs of error *coram nobis* and writs of habeas corpus. While we did not specify the date when Fisher's dishonorable discharge was executed, there is no disagreement that it was done prior to the filing of his habeas petition.[37] This execution of his discharge followed completion of appellate review when our superior court denied his petition for review of this Court's decision.[38] Thus, when this Court received his petition, his case was already final under Article 76, UCMJ.

In concluding that we nevertheless had jurisdiction to consider Fisher's petition, we noted that "[a]s explained in *Ponder*,[39] we reject as overbroad the Government's interpretation of *Clinton v. Goldsmith*[40] . . . as a severe limitation on our consideration of writ petitions." But Ponder sought a writ of mandamus and a stay of proceedings concerning his violation of a lawful order. No conviction, much less completion of appellate review and execution of a discharge, was before this Court. While we found the writ was "in aid of" our potential jurisdiction (to satisfy the All Writs Act and reach the merits of Ponder's petition), the posture of that case was vastly different from that of *Fisher* or the present matter.

In *Fisher*, we held that a "final and conclusive" court-martial under Article 76, UCMJ, was "not a bar to our consideration of [such a petition] and that [a petition for either] a writ of habeas corpus *or* error *coram nobis* may be filed with a military appellate court to collaterally attack a completed

---

[37] Fisher's petition for a writ of habeas corpus (unsuccessfully) claimed he was unlawfully confined by military authorities after serving his court-martial sentence concurrently with his civilian prison sentence. Most relevant here, he averred jurisdiction by the military was terminated *when he received his dishonorable discharge by means of his DD Form 214* while serving his sentence in a California prison. *See Fisher*, 56 M.J. at 693.

[38] *United States v. Fisher*, No. 920034 (N.M.C.M.R. 30 Nov 1992) (unpub. op.); *United States v. Fisher*, 37 M.J. 239 (C.M.A. 1993).

[39] *Ponder v. Stone*, 54 M.J. 613 (N-M. Ct. Crim. App. 2000).

[40] 526 U.S. 529 (1999).

court-martial proceeding."[41] In so holding, we relied heavily upon the ACCA's holding in *Dew v. United States*,[42] whose "expansive approach" in considering remedial jurisdiction has since been cast aside—expressly "repudiated"—by the CAAF in *Arness*.[43]

More recently, in *Best*, we refrained from revisiting *Fisher* where it was "unnecessary to the resolution of [that] case."[44] Unlike in *Best*, however, Petitioner has had his court-martial conviction and sentence reviewed and affirmed in "a final judgment as to the legality of the proceedings,"[45] and his dishonorable discharge has been executed. His case is thus "final and conclusive" with respect to "the proceedings, findings, and sentence[ ] of [a] court[ ]-martial as approved, reviewed, or affirmed as required by [the UCMJ], and all dismissals and discharges [have been] carried into execution . . . ."[46] Thus, because this case is final and we are considering a petition for a writ of habeas corpus, we must address *Fisher* head-on. We do not take lightly the disruption of established precedent. Nonetheless, given the clear wording of the statute and considering *Denedo*, *Loving*, and *Arness*, as well as the holdings of our sister courts in *Gray* and *Chapman*, we must act to correct our earlier precedent.

Accordingly, we overrule this Court's determination in *Fisher*, holding that we are without jurisdiction to consider a petition for a writ of habeas corpus after a case has become final pursuant to Article 76, UCMJ.

---

[41] *Fisher*, 56 M.J. at 693 (emphasis added). As discussed *infra*, the CAAF and the Supreme Court in *Denedo* both make clear that, as a writ of error *coram nobis* is a continuation of the existing proceeding, if we once had jurisdiction to properly hear the matter, we maintain jurisdiction to reach the merits, even after the case is final under Article 76, UCMJ. The writ of habeas corpus, being a new proceeding, is altogether different. While we no longer have jurisdiction to consider a petition for a writ of habeas corpus after satisfaction of Article 76, UCMJ, such a petition may be made to the appropriate Article III court.

[42] 48 M.J. 639 (A. Ct. Crim. App. 1998).

[43] *Arness*, 74 M.J. at 443. *Arness* also overruled the CAAF's opinions that *Dew* itself relied upon as "the expansive concepts of remedial jurisdiction which underlay *McPhail* [*v. United States*, 1 M.J. 457, 462-63 (C.M.A. 1976)] and, in particular, *Unger* [*v. Ziemniak* 27 M.J. 349, 351-55 (C.M.A. 1989)] were later seriously undermined by the Supreme Court's decision in *Clinton v. Goldsmith.*" *Id.*

[44] *Best*, 79 M.J. at 598 (internal quotation marks and citation omitted).

[45] UCMJ art. 71(c)(1) (2012).

[46] UCMJ art. 76.

## B. Writ of Error *Coram Nobis*

While Petitioner did not specifically raise the writ of *coram nobis* in his pro se petition, we heed the call "[t]o make . . . protection[s] effective for unlettered prisoners without friends or funds . . . [by] disregard[ing] legalistic requirements" in order to "do[ ] justice."[47] Taken on Petitioner's claims alone—alleging perjured trial testimony by his minor victim, the lone direct witness to his crimes—this petition seems suited to a *coram nobis* ["before us"] claim as it fundamentally goes to the core of the trial process. We consider such a petition according to our continuing jurisdiction that is not extinguished by Article 76, UCMJ. However, despite finding jurisdiction, Petitioner is not entitled to relief as he has not met the writ's threshold requirements.

A writ of *coram nobis* addresses legal or factual errors "of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid."[48] This extraordinary relief is granted only under exceptional circumstances, where error that may change the result derives from facts not apparent to the court during the original consideration of the case.[49]

We use a two-tiered approach to evaluate claims raised by a petition for a writ of *coram nobis*.[50] Ensuring the writ is only granted in extraordinary cases and does not trivialize case finality,[51] a petitioner must first satisfy each of the following six stringent threshold requirements:

(1) the alleged error is of the most fundamental character, such that use of the writ is necessary to achieve justice;

(2) no remedy other than *coram nobis* is available to rectify the consequences of the error;

---

[47] *United States v. Morgan*, 346 U.S. 502, 505 (1954). *See also Loving*, 62 M.J. at 252 ("incorrectly describing the writ is not fatal to a petition, because courts look at the substance of the writ rather than the form.") (citing *Pyles v. Boles*, 250 F. Supp. 285, 288 (N.D.W.V. 1966)); *see also Chapman*, 75 M.J. at 601 ("The label placed on a petition for extraordinary relief is of little significance.") (internal quotation marks and citation omitted).

[48] *Morgan*, 346 U.S. at 509 n.15 (citations and internal quotation marks omitted); *see also Denedo*, 556 U.S. at 913.

[49] *See United States v. Frischholz*, 36 C.M.R. 306, 309 (C.M.A. 1966).

[50] *See Denedo*, 66 M.J. at 126.

[51] *See Denedo*, 556 U.S. at 911.

(3) valid reasons exist for not seeking relief earlier;

(4) the new information presented in the petition could not have been discovered through the exercise of reasonable diligence prior to the original judgment;

(5) the writ does not seek to reevaluate previously considered evidence or legal issues; and

(6) the sentence has been served, but the consequences of the erroneous conviction persist.[52]

If any requirement is not met, the petition will be denied, and we will not proceed to the second tier where we would analyze the petitioner's assertions according to the relevant standard of review.[53]

Here, we find Petitioner has failed to meet multiple threshold requirements. With an approved sentence in 2011 including confinement for 29 years and 6 months, Petitioner cannot meet the sixth threshold factor as he remains confined at FCI Petersburg Medium with a normal release date of 10 March 2035.[54] While we have held we are without jurisdiction to entertain his petition for habeas corpus, given his ongoing confinement, Petitioner may seek this alternative remedy from the Article III courts. Thus, he fails to satisfy the second threshold factor.[55]

Additionally, Petitioner fails to satisfy the fifth threshold factor. Central to his petition is the assertion that the minor victim, his daughter Tina, committed perjury at his trial. Both at trial and on appeal, the credibility of her allegation was repeatedly attacked as unreliable and fabricated, to no avail, resulting in both his conviction and the affirming of the same under Articles 59 and 66, UCMJ (2012).

Petitioner's current claims bear striking resemblance to those made to our superior court in his initial petition for review in 2013.[56] Petitioner repeatedly protested his innocence, contested rulings of the military judge that failed

---

[52] *Id.*

[53] *Id.*

[54] *See* https://www.bop.gov/ (last accessed 27 August 2020).

[55] *Id.* (stating that such an extraordinary remedy as a writ of *coram nobis* may not issue when alternative remedies, such as habeas corpus, are available).

[56] Filed through counsel pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

to exclude Tina's testimony, claimed the evidence was insufficient because it came from a child, and asserted that Tina "committed perjury by post-trial admission."[57] In his current petition, he again asserts that Tina lied in court and states that she will not now come forward due to her concern about prosecution for perjury.[58] While he includes unsworn declarations making generalized claims from Tina's siblings and a visitor to the Jordans' home, and a sworn affidavit from Tina's mother that purports to attack Tina's trial testimony, there is no documentation from Tina herself to support Petitioner's claim seeking an extraordinary disruption of his long-final court-martial.

These are not new claims. Petitioner raised the substance of these same matters at trial, and they were considered in full by this Court in affirming his conviction[59] and by our superior court in denying review. Thus, assuming arguendo that Petitioner was not in continued confinement and without alternative avenues of relief outside this extraordinary writ of *coram nobis*, he would not satisfy the threshold requirements that prohibit petitioners from merely seeking to re-litigate previously considered evidence or legal issues.

Hence, even considering Petitioner's prayer for relief as a petition for a writ of error *coram nobis*, we find his petition fails to satisfy the *Denedo* requirements for *coram nobis* review.

## III. CONCLUSION

The Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus and of a Writ of Error *Coram Nobis* is **DENIED**.

---

[57] Petition for Reconsideration, USCA Dkt. No. 13-0265/NA of 19 Aug 2013, Appendix 1 at 8.

[58] Decker B. Jordan, Petition to Vacate Conviction, (undated) at 6.

[59] *See Jordan*, 2012 CCA LEXIS 454, at *12-13 ("It is clear from the review of the record of trial that evidence exists which proves every element of the charges for which the appellant was convicted. After carefully reviewing the record and considering the evidence in the light most favorable to the prosecution, we are persuaded that a reasonable fact-finder, in this case the members, could indeed have found all the essential elements of the offenses beyond a reasonable doubt. . . . Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of Appellant's guilt as to those charges.") (internal citations omitted).

Chief Judge MONAHAN, Chief Judge Emeritus CRISFIELD, Senior Judges KING, GASTON, and STEPHENS, and Judges STEWART and HOUTZ concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court